STATE OF NEBRASKA, APPELLEE. v. GARRY C. MAY, APPELLANT.

119 N. W. 2d 307

Filed February 1, 1963. No. 35211.

Jack L. Craven and Martin A. Cannon, for appellant.

Clarence A. H. Meyer, Attorney General, and Cecil S. Brubaker, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a criminal action in which the defendant, Garry C. May, is charged with the crime of motor vehicle homicide as defined by section 28-403.01, R. R. S. 1943. The defendant entered a plea of not guilty. The jury found the defendant guilty as charged, and he was sentenced to not less than 1 year and not more than 3 years in the Nebraska State Reformatory. Defendant has perfected an appeal to this court.

Section 28-403.01, R. R. S. 1943, provides that whoever shall cause the death of another without malice while engaged in the unlawful operation of a motor vehicle shall be deemed guilty of the crime of motor vehicle homicide. The information charged the defendant with causing the death of one Marvin Williams while engaged in the unlawful operation of a motor vehicle. The unlawful operation charged was that while under the influence of intoxicating liquor, defendant caused his motor vehicle to collide with the motor vehicle operated by Marvin Williams, hereinafter referred to as the deceased.

The collision occurred on State Highway No. 33, northeast of Crete, in Saline County, shortly after 2 p. m. on the afternoon of August 11, 1961. Defendant was driving a 1959 Oldsmobile toward Lincoln on highway No. 33. The deceased was driving a 1957 Ford toward Crete. Defendant was driving from the southwest toward the northeast. The deceased was driving from the northeast toward the southwest. For convenience, we will assume that the general direction of the road is east and west.

There is evidence from which the jury could find that approximately a mile east of Crete the defendant passed a car driven by one Harold Downey traveling in the same direction. As he passed Downey, defendant cut in sharply, causing Downey to hit his brake to slow down. The defendant's car then swerved off the paved portion of the highway onto the right shoulder. The car then swerved back and forth several times, going across the middle of the pavement. Two cars coming from the east passed the defendant's car safely, although one of them went off the pavement to do so. When the defendant's car was about a quarter of a mile in front of the Downey car, its occupants observed the Ford operated by the deceased come around a bend in the highway on its own side of the highway. Defendant's car then swerved across into the left lane and swerved back at the same moment that the Ford swerved, and they appeared to meet in the middle or a little over to the right side of the highway. The deceased died of the injuries received.

One of the members of the Crete rescue squad testified to smelling a very strong odor of some kind of alcoholic beverage on defendant's breath when defendant was placed on a stretcher at the scene of the collision. He testified further that defendant's trousers were wet in the crotch area and that the front seat of the car was wet; that the defendant was belligerent and wanted to know where his buddies were; and further, that defendant thought that he was still in Wilber.

Another witness testified defendant's face was flushed; that defendant denied driving the car; and that defendant admitted having four or five beers. The state highway patrol officer who investigated the collision testified in detail about defendant's conduct at the hospital and gave as his opinion that the defendant was under the influence of alcoholic liquor.

There is evidence clearly sufficient to justify a finding that the defendant was operating a motor vehicle

while under the influence of alcoholic liquor and further that while so engaged he collided with the Williams' motor vehicle, causing the death of Marvin Williams. Defendant sets out 13 assignments of error. Some of them are not properly presented. Others are without merit. We discuss herein only the four we believe merit consideration as being prejudicial to the rights of the defendant.

Defendant's defense was predicated on the theory that the collision took place entirely on his side of the highway, and that the automobile of the deceased suddenly swerved into his automobile. To substantiate this theory the defendant produced photographs, taken by a photographer for the Crete News at the scene of the collision, which purported to show marks of the Ford from its own lane of travel directly across the centerline toward the south edge of the highway and the rear of the Ford. None of the State's witnesses observed these marks, but they are clearly apparent in the photographs. There were two fresh gouge marks, one of which the patrolman testified was 10 to 12 inches long, near the extreme south edge of the highway. There was also dirt shown on the photograph in the eastbound lane, or the defendant's lane, which could have been from the collision and could have indicated the approximate point of impact. This debris was at the extreme south edge of the pavement. The photographs and the testimony also indicated that the major damage to the defendant's Oldsmobile was to the left front, and to the deceased's Ford was to the right front. The cars ended up on the south side of the pavement. All but 2 feet of the Ford was off the pavement facing south. The Oldsmobile was south of and 6 inches in front of the Ford.

On this state of the record, the defendant tendered as his instruction No. 8 the following: "You are instructed that the states (sic) of the State of Nebraska provide, in substance, as follows: 'That a driver of a vehicle

upon a highway of sufficient width shall drive the same upon the right half of the highway, unless it is impracticable to drive on such side of the highway, except when overtaking and passing another vehicle and drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible.' " This tendered instruction was refused, and was not covered in any other instruction. It is a proper statement of the law, and there were physical facts from which the jury could have found that the impact occurred because the deceased was on the wrong side of the highway and not because of any unlawful driving on the part of the defendant. It is the duty of the court, upon request of the accused, to instruct the jury upon his theory of the case if there is any evidence to support it. Franz v. State, 156 Neb. 587, 57 N. W. 2d 139. The State argues that the tendered instruction was not complete enough to have any value. Our answer is that the tendered instruction sufficiently suggested an area of defense which should have been covered in the instructions under the evidence in the case. It is prejudicially erroneous not to give a tendered instruction embodying a correct proposition of law if such proposition is applicable to the facts and material to the defense. See Nelsen v. State, 159 Neb. 663, 68 N. W. 2d 194.

The defendant assigns as error the giving of instruction No. 4, which is as follows: "You are instructed that a person is 'under the influence of alcoholic liquor' if such person is under the influence of intoxicating liquor to such an extent as to have lost to an appreciable degree the normal control of his body or mental faculties, *and the amount of alcoholic liquor consumed by the person is wholly immaterial.*" (Italics supplied.) The portion of the instruction criticized is the part italicized. The rest of the instruction has heretofore been approved by this court. See Uldrich v. State, 162 Neb. 746, 77

N. W. 2d 305. In this instruction, we are concerned with proof of a condition, "under the influence of intoxicating liquor." Certainly the amount and the kind of liquor consumed would at least be a circumstance to be considered in determining that condition. We cannot say that it would be wholly immaterial.

Defendant assigns as error the sustaining of the State's objection to the evidence of a reporter who interviewed the State's main witness at the scene of the collision. The cross-examination of this witness was as follows: "Q Mr. Downey, did you talk to other people after this accident around the scene of the accident? A I suppose I did. Q Do you recall talking to a young girl carrying a large newspaper camera, not a large camera but with a flash? A She was the one I said, 'I suppose I should stay here,' and she said, 'Yes, you should until the Patrol get here.' Q My question was, to keep the record straight, did you talk to this woman? A Not to any length at all. She was taking pictures. I saw that. Q Did she ask you anything about this accident as an interview as a reporter? A Not that I can recall. Q Do you recollect telling anybody you were approximately three-quarters of a mile away from this accident when the collision took place? A No; we were three-quarters or more when he went around us but not when the accident took place. Q Do you recall telling anybody after the accident that the collision took place in its entirety in the deceased victim's lane of traffic? A I don't think I did. I think it happened right in the middle of the highway."

The defendant produced the reporter identified in the cross-examination, and the following transpired: "Q On that particular day, Mrs. Buffum, did you talk to people out there? A Yes; I did. Q And on that particular day, was anybody particular person singled out to you or pointed out to you as a witness to this accident? A Yes; they did. Q Is that person at this time in this courtroom? A Yes; he is. Q And would

you please point him out? A The man on the far left in the front row on my left. MR. CRAVEN: Now let the record show that the witness is pointing to Harold Downey, a witness for the state. Q (By Mr. Craven) Now, Mrs. Buffum, to the best of your recollection, did he describe to you the accident as he recalled it shortly thereafter? MR. BARTOS: Just a minute. To that we object as incompetent, irrelevant and immaterial and calling for hearsay. THE COURT: Sustained. Q (By Mr. Craven) Mrs. Buffum, did you talk to Mr. Downey? A Yes I did. Q And what was the conversation? MR. BARTOS: The same objection, if the court please, as calling for hearsay. THE COURT: The same ruling. Sustained. * * * Q (By Mr. Craven) Do you remember anything that you asked him, the words and such, or approximately? A I just ask him, I believe I just ask him what happened in his estimation. Q You ask him what happened in his estimation and did he respond? A Yes. MR. BARTOS: Just a minute. We object to all of this as incompetent, irrelevant and immaterial; no sufficient foundation laid; calling for hearsay. THE COURT: Sustained."

As we view the record, a sufficient foundation was laid for the impeachment of the State's witness if proper questions restricted to the impeachment testimony had been asked of the impeaching witness. If objections were sustained to proper questions, then an offer of proof would be necessary. The questions asked of the impeaching witness were not in proper form and no offer of proof was made, so the assignment of error is without merit.

Defendant assigns as error the giving of instruction No. 17 which is as follows: "You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In determining the weight which the testimony of the witnesses is entitled to receive, you should take into consideration their interest in the result of the suit, if any; their conduct and de-

meanor while testifying; their apparent fairness or bias or relationship to the parties, if any such appears; their opportunity for seeing or knowing the things about which they have testified; their ability to remember and relate accurately the occurrences referred to in their evidence; the extent to which they are corroborated, if any at all, by circumstances or the testimony of credible witnesses; the reasonableness or unreasonableness of their statements; and all other evidence, facts and circumstances proved tending to corroborate or contradict such witnesses. *Insofar as there may be any conflict in the evidence it is your duty to reconcile it if you can; if you cannot, then to determine which is true and which is untrue, and give such weight to the testimony of any witness as in your judgment it should have under all the circumstances of the case."* (Italics supplied.) The defendant complains that the portion of the instruction italicized requires the jury to accept the testimony of all witnesses if there is no conflict in the evidence. We held in Wilson v. State, 150 Neb. 436, 34 N. W. 2d 880: "In jury cases juries are the judges of the credibility of witnesses and of the weight to be given their testimony and, within their province, they have the right to credit or reject the whole or any part of the testimony of a witness in the exercise of their judgment."

In Frank v. State, 150 Neb. 745, 35 N. W. 2d 816, we reiterated the rule that: " 'An instruction in a criminal case the effect of which is to infringe upon the right of a jury as the judge of the credibility of witnesses and the weight to be given their testimony is an invasion and an abridgement of a substantial right of the defendant.' "

The effect of instruction No. 17 is to tell the jurors that it was their duty to reconcile any conflict in the evidence, and is merely another way of saying that they could not reject evidence unless they found it irreconcilable with other testimony which they found to be true, which was the situation in Wilson v. State, *supra.*

As this court said in that case: "The testimony of no witness * * * is surrounded with such sanctity as to require it to be accepted by triers of fact as true in the absence of controversion by other witnesses or conflict with other testimony."

For the reasons given, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., not participating.