STATE OF NEBRASKA, APPELLEE, V.
CRAIG A. DUIS, APPELLANT.

301 N.W.2d 587

Filed January 30, 1981. No. 43400.

Watts & Moran for appellant.

Paul L. Douglas, Attorney General, and John Boehm for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Defendant, Craig A. Duis, was convicted by a jury of assault in the second degree, a violation of Neb. Rev. Stat. § 28-309 (Reissue 1979), which is a Class IV felony. Specifically, he was charged under subsection (1) (a): "Intentionally or knowingly causes bodily injury to another person with a dangerous instrument." He was sentenced to a term of imprisonment of 1 year in the Nebraska Penal and Correctional Complex. His motion for a new trial was overruled and he has appealed to this court, assigning as errors that the District Court: (1) Failed to sustain his motion to dismiss because of insufficiency of the evidence; (2) Failed to grant a motion for a mistrial because of an inaccurate instruction on self-defense; and (3) Failed to grant a motion for a mistrial because of misconduct of the prosecuting attorney. We affirm.

Although varying in some minor details, the facts are not in great dispute. The incident occurred during the early morning hours of November 17, 1979, in the parking lot of Arby's, a restaurant located on Ames Street, between 40th and 42nd Streets, in Omaha, Nebraska. The defendant, driving his car and accompanied by Randy Dean Jorgensen, parked at Arby's, placed an order for food, picked up the order, and went back out to the car. In the meantime, the

victim, Allan Ray Veasley, accompanied David Moss in the latter's car to this same restaurant. They also went inside and ordered some food.

Although there is some disagreement as to who started the name calling, Moss contended that as he left the restaurant to return to his car, one or both of the occupants of defendant's car began calling him obscene names and started toward him as if to cause trouble. Moss claimed that he walked on to his car and made motions as if to take something out of the back seat and lay it up on top of the hood of the car as if it were a gun.

According to the defendant, it was Moss who started the name calling. When Moss proceeded over to his car, the defendant concluded that there was something about Moss' actions that made him suspicious, so he directed his companion, Jorgensen, to get into the car. The defendant then backed up his car and started forward to go out onto Ames Street. As the defendant was making this maneuver, he saw where Moss was standing and thought that he had a weapon in his hand. The defendant and his companion testified that defendant was in a hurry to leave the parking lot, that his car lights were not on, and that as they were either halfway onto or all the way onto Ames Street, both of them heard what they thought was a gunshot. While still driving forward, the defendant reached under his seat, picked up a .32-caliber handgun, and with his right hand fired three shots behind him in the direction of Moss' car. The defendant continued driving westbound on Ames Street to the top of a hill, where he saw a police cruiser and stopped.

As this episode was unfolding, the victim, Veasley, having picked up his food order, started outside and toward the Moss car. As he got to the car, he heard a series of shots, realized that he was struck, and climbed into the car for protection. Veasley was taken to Immanuel Hospital, where he was examined by Dr. Bechtel. The doctor found no bullet fragments, but

did observe a bullet wound that went completely through the thigh.

Defendant's complaint as to the insufficiency of the evidence involves the failure of the State to prove the specific intent of the defendant to assault the particular victim. However, the defendant was not charged with assault with intent to do great bodily harm, as argued by him at several places in his brief. Such a charge, according to some authorities, would necessitate proof of the defendant's intent to do some further act or achieve some additional consequence. Therefore, it is reasoned, specific rather than general intent must be shown in such case. *People v. Hood,* 1 Cal. 3d 444, 462 P.2d 370, 377, 82 Cal. Rptr. 618 (1969). Rather, defendant was charged with intentionally and knowingly causing bodily injury to another person with a dangerous instrument. Assault with a dangerous instrument, like simple assault, is a "general intent" crime. *People v. Rocha,* 3 Cal. 3d 893, 479 P.2d 372, 92 Cal. Rptr. 172 (1971); *People v. Richard Johnson,* 42 Mich. App. 544, 202 N.W.2d 340 (1972). It was only necessary to prove that defendant did the act of injuring another person with a dangerous instrument in an intentional manner. *Sall v. State,* 157 Neb. 688, 61 N.W.2d 256 (1953). This issue was correctly submitted to the jury by instruction No. 9, NJI 14.11, and was decided adversely to the defendant.

Defendant contends that the instruction on self-defense, instruction No. 10, which followed NJI 14.33, was incorrect under the circumstances of this case. Neb. Rev. Stat. § 28-1409 (Reissue 1979) provides that deadly force is not justifiable if "the actor knows that he can avoid the necessity of using such force with complete safety by retreating." Under the circumstances, we are not completely convinced that any instruction on self-defense was warranted. However, we are not prepared to say as a matter of law that the defendant was not entitled to have his theory of defense passed upon by the jury.

We have said that it is the duty of the trial court to instruct the jury on the law of the case whether requested to do so or not. *State v. Ross*, 183 Neb. 1, 157 N.W.2d 860 (1968). We have similarly stated the law to be that the trial court, on request of the accused, must instruct the jury on the accused's theory of the case if there is any evidence to support it. *State v. May*, 174 Neb. 717, 119 N.W.2d 307 (1963). At the instruction conference held immediately before charging the jury, the defendant's counsel stated that he had no instructions to request nor did he have any objections to those proposed by the court. "'The failure to object to instructions after they have been submitted to counsel for review will preclude raising an objection on appeal.'" *Haumont v. Alexander*, 190 Neb. 637, 640, 211 N.W.2d 119, 122 (1973).

The jury was instructed, and retired to deliberate at 3:02 p.m., March 7, 1980. On the same day at 4:25 p.m. the court received a request for clarification from the jury as to the meaning of "another person" as referred to in instruction No. 7. This instruction set forth the statutory description of the alleged offense, i.e., "causing bodily injury to another person . . . ." The court then prepared and read to the jury supplemental instruction No. 1 which states in pertinent part as follows: "The wording 'another person' as used in the Nebraska Criminal Code refers to the person injured. Instruction No. 7 should be read in conjunction with all the other instructions, but specifically with Instruction No. 2." Instruction No. 2 set forth the nature of the charges taken from the information, based upon the statutory language of § 28-309. At the conference held with counsel for both defendant and the State, before reading the supplemental instruction, defendant's attorney said: "I know it is difficult, but I interpret it to mean a different person and I think that the instructions are not clear as to the reason this note came out and as to the self defense instruction only, goes to Moss rather than to Veasley and con-

sequently there is a general misunderstanding, and I think the Court should clarify the self defense instruction to show that — anyway, it is my understanding that the Court is not going to do that and in view of the general confusion, I am going to move for a mistrial." The motion was overruled.

Although never specifically pointed out to the trial court, it is apparent that the language of instruction No. 10 claimed by the defendant to have been unclear is the following: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such person on the present occasion." Undoubtedly, it would have been more precise had the instruction explained to the jury that if the defendant was justified in using force toward Moss, he was justified in the force employed, which mistakenly struck the actual victim. *Mayweather v. State*, 29 Ariz. 460, 242 P. 864 (1926). However, the instruction given by the court is a correct statement of the law. Nowhere does it appear in the record that the defendant's attorney ever tendered a "clarifying" instruction or that, if tendered, the trial court would have refused to consider it. As a matter of fact, even at this stage of the proceedings, defendant has not yet proposed such an instruction. "Where an instruction is technically correct, and is couched in terms which in the opinion of a party are liable to be misunderstood or misapplied by the jury, it is the party's duty to call the court's attention to the supposed defect and *present a suitable* instruction." (Emphasis supplied.) *State v. Siers*, 197 Neb. 51, 59, 248 N.W.2d 1, 6-7 (1976).

The last assignment of error relates to alleged comments made by the prosecuting attorney relating to the defendant's failure to disclose exculpatory information to the police. The record does show that immediately following closing arguments the defendant's attorney moved for a mistrial for the reason

that the "State of Nebraska . . . again commented on the Defendant's silence and that it should be used against him because he did not voluntarily tell the police he had just been in a shooting." However, no record was made of such arguments and, therefore, we do not know what was said. "It is the law in Nebraska that, where allegedly prejudicial remarks of counsel do not appear in the bill of exceptions, this court is precluded from considering an assigned error concerning such remarks." *State v. Harris*, 205 Neb. 844, 851, 290 N.W.2d 645, 650 (1980).

However, in fairness to the defendant, it should be pointed out that during the State's examination of police officer Larry Lutton, it was elicited that there had been a "response of silence" on the part of the defendant, which occurred prior to arrest. Lutton explained that an accident had occurred at 48th and Ames Streets and that he had used his cruiser car to block westbound traffic. He then heard a noise like a car accelerating, and saw a car being driven by defendant come over the hill and skid to a stop. The officer went up to the automobile and requested the defendant to get out of the car and display his license, and also asked defendant what he was trying to do, "kill us?" Lutton further testified that while the defendant was moving his car out of the street, at the officer's request, he heard a broadcast of the shooting incident, including a description of the defendant's car, so he went back to the defendant, placed him under arrest, and handcuffed him.

The prosecuting attorney twice asked the officer if the defendant had said anything when he was first stopped and asked to get out of the car. Lutton responded "no" to both questions. Defendant's lawyer made no objection to the questions by the prosecutor; however, after the last time, counsel did move for a mistrial. The defense argued that the prosecutor was, in effect, commenting by innuendo on the defendant's silence, in violation of his fifth amendment rights.

The motion for mistrial was overruled.

In support of his position, defendant relies on *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). However, that case involved a situation wherein the defendant had been arrested, given his *Miranda* warnings, and then chose to remain silent. The Court, quoting from *United States v. Hale*, 422 U.S. 171, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975), said: "'[W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . .'" *Doyle* at 619.

In the present case, the defendant's silence occurred at a time before he was either arrested or suspected of the shooting. As a matter of fact, it was under a similar factual situation that the Court, in *United States v. Serrano*, 607 F.2d 1145 (5th Cir. 1979), had occasion to consider and reject the application of *Doyle*. "None of the case support adduced by defendants controls the question before us. In each of those cases, the prosecutor commented on a defendant's failure to exculpate himself after he had been arrested and given *Miranda* warnings. The *Doyle* opinion emphasizes the significance of *Miranda* warnings to the constitutional dimension of improper prosecutorial comment: . . . At the time of the boarding and general questioning, defendants were not subjected to coercive or custodial interrogation but only to those restrictions imposed by a routine Customs check." *Serrano* at 1151-52. There is no merit to this or any of the other of defendant's assignments of error.

The defendant raises no question as to excessiveness

of the sentence, and from an examination of the record, we agree that no evidence of the same appears. The judgment and sentence of the District Court were correct, and are affirmed.

AFFIRMED.

WHITE, J., concurs in result.