STATE OF NEBRASKA, APPELLEE, V. JESSE W. ROWLAND, APPELLANT.

452 N.W.2d 758

Filed March 23, 1990.    No. 89-483.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Pursuant to verdict, defendant, Jesse W. Rowland, was adjudged guilty of driving while his operator's license had been revoked under the provisions of Neb. Rev. Stat. § 39-669.07(c) (Supp. 1987), and was thus, for a period of 15 years, not privileged "to drive any motor vehicle in the State of Nebraska for any purpose . . . ." He was subsequently sentenced to imprisonment for a period of not less than 20 months nor more than 5 years. Rowland asserts, in summary, that the trial court erred in (1) receiving certain evidence, (2) refusing to strike certain other evidence, (3) overruling his motion for new trial, and (4) imposing an excessive sentence. We affirm.

At approximately 9:28 p.m. on April 4, 1988, Lancaster County Deputy Sheriff William Jarrett observed a pickup truck parked within the northbound lane of North 98th Street near Lincoln. The truck displayed no headlights and apparently displayed no taillights. Jarrett parked his sheriff's cruiser directly in front of and facing the parked truck. After radioing his location and a description of the truck to the police dispatcher, Jarrett left his cruiser and walked to the truck, where he found Rowland asleep inside and where he noticed two beer cans in the vehicle, one of which was half full. After summoning a backup unit to the scene, Jarrett woke Rowland and asked to see his operator's license and a registration for the

truck. Jarrett thereupon noticed the odor of alcohol coming from Rowland, and it appeared to Jarrett that Rowland had bloodshot eyes and "somewhat of a slurred speech."

Rowland got out of the truck and displayed his operator's license. He did not have a registration for the truck but did produce a title to the vehicle, which indicated that it had been owned by Shannon Havel. Havel had apparently signed the title to transfer the vehicle to another owner, but the name of the transferee was not specified on the title.

Jarrett testified that when he asked why Rowland was parked in the road, Rowland replied that he had run out of gas and that Havel "had left . . . walking to go get gas and she had not returned." Jarrett then asked Rowland if he had been operating the truck. When asked by the prosecuting attorney if Rowland responded to that question, Jarrett testified: "No. He was evasive with his answer." Jarrett explained:

> I had gone over the driver's license and had specifically asked whether or not Mr. Rowland was operating the vehicle. Whenever I would do so, then he would again advise that Sharon [sic] Havel was with him and that he had run out of gas and that she had left. He never would specifically answer yes or no to whether or not he was driving the vehicle.

After asking Rowland why he was parked in the road and whether he had been operating the truck, Jarrett left another deputy to stand with Rowland by the vehicle, and radioed for background information with respect to Rowland and the truck in which he was found. Jarrett learned that Rowland's operator's license had been revoked as aforesaid. Jarrett then placed Rowland under arrest for driving during a period when his license had been revoked.

After he had arrested Rowland and placed him in the sheriff's cruiser, Jarrett surveyed the area, looking for footprints around the truck in an effort to corroborate Rowland's statement that Havel had been with him and had left the vehicle to get gasoline. Although the gravel road on which the truck was parked was "somewhat muddy," Jarrett found no footprints leading away from the truck other than those of Rowland and the arresting officers.

According to Havel's testimony, Rowland had been at her house at around 6:30 or 7 p.m. on the night he was arrested. He arrived at her house alone in the truck, and a short time later he left alone in the same vehicle. Havel further testified that she had not, on the night in question, left the vehicle to get gasoline as claimed by Rowland and indeed had not on that night driven the truck while in Rowland's company.

As his first summarized assignment of error, Rowland asserts that the trial court erred in allowing the State to offer evidence that Rowland had been consuming alcohol prior to his arrest.

Anticipating Jarrett's testimony concerning the beer cans he observed in the truck and Rowland's condition, Rowland objected to this evidence before it was given. He argued that evidence he had been consuming alcohol prior to his arrest was irrelevant to whether he had been operating a motor vehicle while his operator's license had been revoked.

Neb. Rev. Stat. § 27-401 (Reissue 1989) embodies the modern view that evidence is probative if it tends in any degree to alter the probability of a material fact. *State v. Oliva*, 228 Neb. 185, 422 N.W.2d 53 (1988). See, also, *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989). While under Neb. Rev. Stat. § 27-403 (Reissue 1989) "relevant . . . evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," Rowland, as will be seen, fails to show the existence of such prejudice. Jarrett merely described the facts and circumstances surrounding Rowland's arrest, including evidence that Rowland may have been drinking and may have been intoxicated on the evening he was arrested. A juror could have concluded therefrom that it was likely Rowland in fact had been drinking and that, in an alcohol-impaired state, he would be more likely to exercise such poor judgment as to operate a vehicle notwithstanding that his operator's license had been revoked. The evidence would also help explain why Rowland may have erroneously thought that Havel had been with him in the truck and had gone to get gasoline.

It is within the trial court's discretion to admit or exclude relevant evidence, and such rulings will be upheld on appeal

absent an abuse of discretion. *State v. Ruyle, ante* p. 760, 452 N.W.2d 734 (1990); *State v. Chapman, ante* p. 369, 451 N.W.2d 263 (1990). For the reasons described earlier, it cannot be said the trial court abused its discretion by permitting Jarrett to testify with respect to evidence that Rowland had been consuming alcohol prior to his arrest.

In connection with his second summarized assignment of error, Rowland contends that the trial court erred in (1) overruling his motion to strike the testimony of Jarrett that Rowland was "evasive" when asked whether he was driving the vehicle and (2) overruling his motion to strike the testimony of Jarrett that Rowland would not answer when asked whether he was driving the vehicle.

The first aspect of this summarized assignment of error was precipitated by the following exchange:

Q. Did you talk to Mr. Rowland?

A. Yes, I did.

Q. What did you say?

A. I had asked Mr. Rowland if there was a problem or why, what he was doing there. He went directly into that there was another party in the vehicle, a Shannon Havel, H-a-v-e-l. He advised that they had run out of gas and Miss Havel had left and walking [sic] to go get gas and she had not returned.

Q. Did you ask Mr. Rowland anything at that time?

A. I asked him if he had been operating the vehicle.

Q. And did Mr. Rowland respond?

A. No. He was evasive with his answer.

Assuming, without deciding, that the trial court erred in overruling Rowland's motion, neither the record nor Rowland's brief contains any indication of how Rowland could have possibly been prejudiced by this evidence. A conviction will not be set aside in the absence of a showing that an error prejudiced the defendant. *State v. Chapman, supra.* Thus, this first aspect of Rowland's second summarized assignment of error is without merit.

Despite the language of the second aspect of this summarized assignment of error, it is apparent, based upon the references to the record in his brief, that Rowland is actually asserting that

the trial court erred in allowing testimony regarding Rowland's failure to respond to a question whether his operator's license had been revoked rather than his failure to respond when asked whether he was driving.

At any rate, Jarrett testified that before placing Rowland under arrest and before he radioed for information regarding the license which Rowland had displayed, he asked Rowland whether he had been operating the truck and also asked whether his operator's license had expired. Jarrett's testimony indicates that Rowland was unresponsive to these questions. Rowland contends that evidence of his prearrest silence was not admissible at trial and that admission of such evidence violated his right against self-incrimination under the 5th and 14th amendments to the U.S. Constitution.

The State argues that Rowland's unresponsiveness to Jarrett's questions occurred prior to arrest and that under *State v. Duis*, 207 Neb. 851, 301 N.W.2d 587 (1981), such prearrest silence is admissible. However, as Rowland argues, the rule in *Duis* is applicable when the defendant's testimony on direct examination is being impeached by the State. See, also, *State v. Wells*, 229 Neb. 89, 425 N.W.2d 338 (1988); *State v. Lofquest*, 227 Neb. 567, 418 N.W.2d 595 (1988). In this instance, the State commented on Rowland's silence in its own case in chief. In *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), the U.S. Supreme Court reversed the defendant's conviction because the State's attorney commented to the jury about the defendant's failure to testify at trial, and the trial court instructed the jury that it could take such failure to testify into consideration in determining its verdict.

In analyzing *Griffin*, the U.S. Court of Appeals, in *U.S. ex rel. Savory v. Lane*, 832 F.2d 1011, 1017-18 (7th Cir. 1987), stated:

> While it is true that *Griffin* involved governmental use of the defendant's silence at trial, rather than when initially questioned by police, and [*United States v. Shue*, 766 F.2d 1122 (7th Cir. 1985),] rested on Due Process grounds, rather than on the right to be free from self-incrimination, we do not believe these factors make a difference. The right to remain silent, unlike the right to

counsel, attaches before the institution of formal adversary proceedings. *Compare United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (right to counsel under Sixth Amendment does not attach until the defendant becomes an *"accused"* within the meaning of that amendment) *with* U.S. Const.Amd. V ("No *person* shall . . . be compelled in any criminal case to be a witness against himself. . . ."). . . .

Thus, the case is distinguishable from the cases the state cites such as *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) and *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), where the government used the defendant's silence to impeach his trial testimony. After all, there is no constitutional right to commit perjury, which impeachment is designed to detect. Because of this, the *Doyle* [*v. Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976),] rule is predicated on the implied promise of the *Miranda* warnings. The cases which have allowed impeachment by silence rely on the fact that the defendant opens himself to impeachment by taking the stand. See *Fletcher*, 455 U.S. at.605-06, 102 S.Ct. at 1311-12; *Jenkins*, 447 U.S. at 235-36 & n. 2, 100 S.Ct. at 2127-28 & n. 2. There is, on the other hand, a constitutional right to say nothing at all about the allegations. While the presence of *Miranda* warnings might provide an additional reason for disallowing use of the defendant's silence as evidence of guilt, they are not a necessary condition to such a prohibition.

In sum, we believe that the state's suggestion that use of a defendant's silence to impeach his trial testimony presents a constitutional issue, but use of his silence to imply guilt does not, is nothing short of incredible, given the language of our constitution and the interpretation it has been consistently given. Because we find the error in referring to the defendant's silence to be of constitutional magnitude, we review it under the "harmless beyond a reasonable doubt" standard.

(Emphasis in original.) Thus, it was indeed error for the trial

court to permit Jarrett to testify concerning Rowland's unresponsiveness when questioned about whether his operator's license had been revoked and whether he was driving.

An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt. *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988); *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988). But it is also true that improper admission of evidence constitutes harmless error where the evidence is cumulative and there is other competent evidence to support the conviction. *State v. Chapman, ante* p. 369, 451 N.W.2d 263 (1990).

Disregarding any evidence of Rowland's unresponsiveness, Havel's testimony, combined with the other evidence concerning the facts and circumstances surrounding Rowland's arrest, provides overwhelming evidence that Rowland did operate the truck on public roads on April 4, 1988. The trial court's error in this regard was thus harmless beyond a reasonable doubt.

Rowland's third summarized assignment of error alleges that the trial court erred in overruling his motion for a new trial.

In addition to grounds which mirror some of the foregoing unmeritorious summarized assignments of error, Rowland contends in his new trial motion that the trial court erred in overruling his objection to the exhibit which documents the revocation of his operator's license. This documentation was provided by the Nebraska Department of Motor Vehicles and is admissible under the public records exception to the hearsay rule. See Neb. Rev. Stat. § 27-803(7) (Reissue 1989). Thus, Rowland's contention with respect to this issue is also without merit.

Rowland's last assertion in his new trial motion is that his conviction is not sustained by sufficient evidence. In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the

evidence; such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Wyatt, ante* p. 349, 451 N.W.2d 84 (1990); *State v. Johns,* 233 Neb. 477, 445 N.W.2d 914 (1989); *State v. Wokoma,* 233 Neb. 351, 445 N.W.2d 608 (1989). Suffice it to say that the State did present sufficient evidence to convict Rowland of driving while his operator's license was revoked.

A motion for a new trial is addressed to the discretion of the trial court, and absent an abuse of discretion, the trial court's ruling will be upheld on appeal. *Worth v. Schillereff,* 233 Neb. 628, 447 N.W.2d 480 (1989); *Lemke v. Northwestern Public Serv. Co.,* 233 Neb. 223, 444 N.W.2d 326 (1989).

Under the circumstances, it cannot be said the trial court abused its discretion by overruling Rowland's motion for a new trial.

In addition, Rowland's brief does not discuss the assignment of error relating to the new trial motion. Generally, assigned errors not discussed in an appellant's brief are not considered by this court. *State v. Narcisse,* 231 Neb. 805, 438 N.W.2d 743 (1989).

As his final summarized assignment of error, Rowland contends that the trial court abused its discretion in imposing an excessive sentence.

As often noted, a sentence imposed within the statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Von Busch, ante* p. 119, 449 N.W.2d 237 (1989); *State v. Schall, ante* p. 101, 449 N.W.2d 225 (1989); *State v. Rhodes,* 233 Neb. 373, 445 N.W.2d 622 (1989).

The crime for which Rowland was convicted is a Class IV felony, punishable by up to 5 years' imprisonment, a $10,000 fine, or both. The presentence report reveals that Rowland has at least five convictions for driving while intoxicated or under the influence of alcoholic beverages; that on at least one occasion Rowland was driving while his license was suspended prior to his arrest; and that when Rowland was sentenced in this case, he had pled no contest to an identical charge stemming from an arrest made subsequent to the arrest made in this case.

The record amply demonstrates that Rowland has no respect

for the rules of the road and that the sentence is not excessive.

AFFIRMED.

BOSLAUGH, J., concurs in the result.