NOLAN LLOYD, Petitioner-Appellee, *v.* JO ANN LLOYD, Respondent-Appellant.

First District (3rd Division)    No. 80-227

Opinion filed December 24, 1980.

Krebs & Langowski, of Chicago, for appellant.

Claire Adais, of Stanley F. Kaplan, P. C., of Chicago, for appellee.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

The sole issue raised in this appeal is whether the trial court abused its discretion when it awarded custody of the respondent's minor child to the petitioner.

In 1976 both the petitioner, Nolan Lloyd (Nolan), and the respondent, Jo Ann Lloyd (Jo Ann), filed petitions for dissolution of their marriage in the Circuit Court of Cook County. Both parties requested custody of the minor child, Nolan Lloyd, Jr. (Nolan, Jr.). On May 23, 1978, the trial court found that Nolan had proved his grounds for dissolution of marriage.

On June 5, 1979, a hearing was held concerning the issue of custody of Nolan, Jr. At that hearing, the parties stipulated that certain blood tests established that Nolan was not the father of the child.

Nolan Lloyd testified that he worked as a meat cutter in Chicago for 20 years. He stated that he met Jo Ann in 1969 and subsequently engaged in regular sexual relations with her. After Jo Ann informed Nolan that she was pregnant in 1970, the parties moved into an apartment together. On December 28, 1970, Nolan, Jr., was born.

In 1971 Jo Ann moved into another apartment with the baby. Nolan kept the baby on weekends while Jo Ann worked. In 1972 the baby lived

with Nolan. In 1973 Nolan and the child moved to the apartment where they presently reside. At that time Nolan enrolled the child in nursery school. In 1974 Nolan and Jo Ann were married. However, Jo Ann moved out of Nolan's apartment a few days after the ceremony.

In 1975 the parties obtained a new birth certificate for Nolan, Jr., which reflected the fact that Nolan was the father. At no time did Jo Ann tell Nolan that he was not the father of the child.

One morning in August of 1976, Jo Ann arrived at Nolan's apartment. Jo Ann stayed with Nolan, Jr., while Nolan went to work. When Nolan returned that evening, Jo Ann and the child were gone.

Six and a half weeks later private detectives hired by Nolan located Jo Ann and Nolan, Jr., in Cincinnati, Ohio. Nolan went to Cincinnati, found Nolan, Jr., with Jo Ann's sister in a grocery store and brought Nolan, Jr., back to Chicago.

At present Nolan, Jr., lives with Nolan in Chicago where he is enrolled in a private school, plays basketball and participates in a Cub Scout program.

Dee Bellanfant, a minister, testified that Nolan and Nolan, Jr., had a good relationship and that Nolan, Jr., obeyed his father.

Claudia Brison, Nolan's aunt, testified that Nolan treats the child well. She also stated that she takes care of Nolan, Jr., while Nolan is at work.

Jo Ann Lloyd testified that she is a nurse's aid in Cincinnati where she lives with her sister. She stated that Nolan was not the father of the child, that he was aware of that fact and that she never told him that he was the father. The reason the parties married in 1974 was to enable the child to use Nolan's name. Jo Ann admitted that she signed the affidavit for the birth certificate which indicated that Nolan was the child's father.

Jo Ann explained that the reason Nolan, Jr., often stayed with Nolan before her move to Cincinnati was that she worked nights and did not have a car in which to take the child to a babysitter.

The trial court interviewed Nolan, Jr., in chambers. He stated that he wanted to live with Nolan "because he kept me since I was a baby and he diapered me." Nolan, Jr., told the court that he did not want to live with his mother. Nolan, Jr., stated that when he was a baby his mother would leave him alone when she went out with her boyfriends.

On June 6, 1979, the trial court found that both Nolan and Jo Ann were fit and proper persons to have custody of the child. The court determined that it was in the best interest of the child to award custody to Nolan. However, because the court believed that Illinois law provided that the natural parent has a superior right to custody, it awarded custody to Jo Ann.

Nolan filed a petition for rehearing, which was considered by the trial court. On August 7, 1979, the trial court reversed its earlier holding and awarded custody to Nolan.

Jo Ann argues that a natural parent is entitled to the custody of her child, unless there is a compelling reason to justify awarding custody to a third person. She argues that because the trial court determined that she was a fit parent and because the record reveals no compelling reason for awarding custody to Nolan, the trial court's ruling on custody was an abuse of discretion.

The law presumes that it is in the best interest of a child to be raised by his natural parent. (*In re Custody of Piccirilli* (1980), 88 Ill. App. 3d 621, 410 N.E.2d 1086.) However, the natural parent's superior right to custody is not absolute and must yield to the best interest of the child. (*Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613; *Cebrzynski v. Cebrzynski* (1978), 63 Ill. App. 3d 66, 379 N.E.2d 713.) It is not necessary that the natural parent be found unfit or be found to have legally forfeited his right to custody if it is in the best interest of the child that he be placed in the custody of someone other than the natural parent. (*In re Custody of Piccirilli*; *Soldner v. Soldner* (1979), 69 Ill. App. 3d 97, 386 N.E.2d 1153.) In determining the best interest of the child, the court must consider the particular facts and circumstances of each case. *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417; *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 365 N.E.2d 647. See also Ill. Rev. Stat. 1977, ch. 40, par. 602.

We believe that the trial court's finding that it was in Nolan, Jr.'s best interest that he be placed in the custody of Nolan was supported by the evidence. Although medical tests established in 1979 that Nolan was not the father, his testimony and his conduct reveal the presence of the bonds which exist between a parent and his child. From the date of Nolan, Jr.'s birth Nolan has loved, raised and supported him as his son. Except for the 6½ weeks spent in Cincinnati, Nolan, Jr., has lived with Nolan since 1972. He is enrolled in a private school, supervised by Nolan's aunt while Nolan works, and a participant in sports and the Cub Scouts. In his interview with the trial court Nolan, Jr., expressed his desire to remain with Nolan.

In contrast Jo Ann presented no evidence concerning her environment in Cincinnati. There was no testimony concerning the neighborhood in which she lives or the educational and social opportunities available for Nolan, Jr.

Jo Ann argues that if Nolan had not "abducted" her son, Nolan, Jr., would now have a normal home, school and community existence with her in Cincinnati. Moreover, she contends that the child's preference for Nolan can be explained by the fact that he has lived with Nolan during the lengthy pendency of the legal proceedings.

We believe that these statements are inaccurate for several reasons. First, the record reveals that Nolan, Jr., has lived with Nolan and has been supported emotionally and financially by Nolan since 1972. Second, although Jo Ann claims that Nolan abducted the child, it was Jo Ann who first surreptitiously took the child to Cincinnati from his home in Chicago. Third, although Jo Ann now complains about the significant delay which occurred between the filing of the petitions for dissolution of marriage in 1976 and the final determintion of custody in 1979, there is no evidence that Jo Ann took any action to expedite the proceedings. At no time did Jo Ann make any attempt to secure temporary custody of Nolan, Jr. Furthermore, we have received no explanation for the lengthy proceedings and cannot assume that either Nolan or the trial court was to blame for the unusual delay which occurred.

In a custody proceeding the trial court is vested with great discretion because of its superior opportunity to observe the witnesses, evaluate the evidence and determine the best interests of the child. The court's determination will be reversed only if it has clearly abused its discretion or its decision was contrary to the manifest weight of the evidence. (*In re Custody of Piccirilli; Cebrzynski v. Cebrzynski.*) We believe that the trial court's decision was supported by the manifest weight of the evidence and that there was no abuse of its discretion when it awarded custody to Nolan.

For the foregoing reasons the judgment of the Circuit Court of Cook County is hereby affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.