*In re* MARRIAGE OF CHARLENE ANN THEIS, Plaintiff-Appellant, and TERRY LEE THEIS, Defendant-Appellee.

Third District   No. 3—83—0720

Opinion filed March 6, 1984.

Charles O. Brizius and Murray S. Pearlman, both of Chicago, for appel-

lant.

No brief filed for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

This is an interlocutory appeal under Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)) from an order of the circuit court of Kankakee County modifying a preliminary injunction. We reverse.

In post-dissolution of marriage proceedings, the appellant, Ms. Charlene Theis (mother), sought preliminary and permanent injunctions restricting the appellee's, Mr. Terry Theis' (father), rights of visitation with the parties' two minor children, April and Timothy. The mother alleged that the father had sexually abused April. On August 3, 1983, the trial court granted a preliminary injunction. However, in the following November, the lower court entered two orders: one denied the mother's motion to reinstate certain testimony which was previously stricken and the other modified the preliminary injunction. Pending the hearing on the permanent injunction and custody modification, the father was allowed to take the children from the mother on specified days but only in the presence of the father's new wife.

The mother appeals from the November orders and attacks the lower court's evidentiary rulings. The nature of these evidentiary issues necessitates a review of the testimony.

The mother testified that the children, Timothy and April, visited their father in January, February and March, 1983. April was then three years old and Timothy was eight years old. In February, April began wetting her bed at night and complained of pain when urinating. In early March, April again complained to her mother that her vagina hurt. The mother examined April and noticed redness and a slight discharge from her vaginal area. The mother consulted Dr. Lu in mid-April.

Dr. Lu had been April's treating physician since 1980 and had treated April for a bladder infection in 1982. Dr. Lu testified that initially she thought April might have had another bladder infection. Urine tests, however, showed no indications of such an infection. In accordance with standard medical practice, Dr. Lu interviewed both the mother and April to obtain a history in order to discover the cause of April's medical problem and to devise a treatment. The mother mentioned that April's symptoms began after visitations with her father. Dr. Lu further related that a vaginal discharge is not necessarily the result of sexual contact. April, herself, may have inserted a foreign body. Nonetheless, Dr. Lu obviously suspected abuse by the

father because in the course of her examination, Dr. Lu asked April several questions concerning the touching of her vaginal area. Dr. Lu testified as follows:

> "*** I pointed to her private area. I asked her 'did your father touch you there?' [external vaginal area] *** April had tears in her eyes and she nodded her head [up and down] ***."

The questions that followed were also yes or no questions which inquired as to the manner in which April was touched. To each question, April responded by nodding her head. Dr. Lu noted that, as she questioned April, her crying became more severe. Dr. Lu was unable to continue with a physical examination of April because of her upset state, but was able to obtain a vaginal culture. The tests performed on the culture showed that April had a disease known as gardenerella vaginalis. This disease is rarely found in a female below the age of puberty and is very common in sexually active women.

Dr. Lu reported her suspicion of child abuse to the Department of Children and Family Services (DCFS). Mr. Taylor, from DCFS, testified that he interviewed April and her mother on April 29. It is interesting to note that, according to the mother's testimony, April, prior to February, was an outgoing child and would reach out to any man. But, after February, she became somewhat withdrawn and avoided contact with men. Consequently, Mr. Taylor had to ask questions of April through her mother. Mr. Taylor asked April if anyone touched her in her vaginal area. He also asked April to get a doll and show him how she had been touched. Apparently, April showed Mr. Taylor how she had been touched. However, Mr. Taylor's observation is not part of the record because of a sustained objection interposed by the father's attorney. The mother's attorney did make an offer of proof which included Mr. Taylor's conclusions that the child was a reliable source of information and that the child had been sexually abused by her father.

The trial court struck the testimony of the mother, Dr. Lu and Mr. Taylor which recounted what April said or did concerning the alleged abuse. The mother argues this was error for four reasons.

■ First, the mother contends that Mr. Taylor is an expert DCFS investigator who developed opinions relevant to this case from the contents of his report. The mother argues that under the rules adopted in *Wilson v. Clark* (1981), 84 Ill. 2d 186, Mr. Taylor's opinions and the contents of his report should have been admitted as substantive evidence. We disagree. *Wilson* deals with testimony of experts based upon medical records, not with the admission of the records themselves. (*Guerrero v. City of Chicago* (1983), 117 Ill. App.

3d 348, 351.) Also, even assuming that Mr. Taylor is a qualified expert, a foundation must first be laid to demonstrate that the trier of fact needs the assistance of an expert opinion, as contrasted with evidentiary facts, in order to decide an issue. (See *People v. Covey* (1966), 34 Ill. 2d 195, 197.) Such indication is lacking in this case.

Second, the mother argues that Mr. Taylor should have been allowed to testify in the same manner as an appointed expert from DCFS. Section 605 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 605) empowers a trial court to order an investigation and report concerning the custodial arrangements for the child. The report may be used by the court in determining custody, and the preparer of the report is subject to cross-examination. In the instant case, the trial judge did not grant the mother's request for an investigative report. The mother claims that this was error. In addition, she argues that Mr. Taylor's conclusions concerning the credibility of the child and the abuse by the father would have been admissible had they been in a section 605 report. She contends that since a report should have been ordered, Mr. Taylor's conclusions should have been admitted to rectify the error of not ordering a report.

Even if we were to assume that Mr. Taylor's investigation and report was the equivalent of a section 605 investigation and report, and that a report should have been ordered, we cannot agree that the report could encompass the finding of fact concerning who abused April. The section 605 report is only evidence of what the investigator observed and of his conclusions concerning suggested custody arrangements based upon those observations. Any underlying facts contained in the report which are outside the personal knowledge of the investigator are hearsay.

Third, the mother argues that Dr. Lu's testimony should be admissible under the treating-physician exception to the hearsay rule. In *People v. Gant* (1974), 58 Ill. 2d 178, a treating doctor, in order that he might have a better understanding of the victim's problem, inquired of the patient as to what had happened. At trial, the doctor was allowed to testify to the victim's statements. The victim stated that she was sitting on a couch when a man entered the room behind her and threatened her. She also mentioned she knew the attacker. The doctor's rendition of the victim's statement was held to be admissible evidence as an exception to the hearsay rule.

The *Gant* court describes the exception as follows:

" 'Statements of a presently existing bodily condition made by a patient to a doctor consulted for treatment are almost uni-

versally admitted as evidence of the facts stated ***. Although statements to physicians are not likely to be spontaneous, since they are usually made in response to questions, their reliability is assured by the likelihood that the patient believes that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician. ***

The exception might be taken one step further to encompass statements made to a physician concerning the cause or the external source of the condition to be treated.' McCormick, Handbook of the Law of Evidence 690-691 (2d ed. 1972); see also Annot., 37 A.L.R.3d 778, 802 (1971); *Jensen v. Elgin, Joliet and Eastern Ry. Co.* (1962), 24 Ill. 2d 383, 388.

The rule is 'equally applicable whether the case is civil or criminal.' (*State v. Orsini* (1967), 155 Conn. 367, 371, 232 A.2d 907, 910.)" 58 Ill. 2d 178, 186.

■ In the instant case, much as in *Gant*, Dr. Lu's inquiry of April concerned the events which caused her injury and the identity of the attacker. Yet, the trial judge refused to allow Dr. Lu's testimony under the treating-physician exception. The trial judge based his decision on the absence of evidence that the child was of sufficient maturity to understand that a patient should not falsify the information provided to a doctor. We believe that it is not necessary that there be evidence in the record which demonstrates that the patient understands the relationship between truthful information and good treatment. A child of three years, when injured, will naturally tell the truth as to the cause of the injury. (*Cf. People v. Chatman* (1982), 110 Ill. App. 3d 19, 27.) Unless there is evidence that the child tends to fabricate the cause of the injuries, the statement should be considered trustworthy.

Dr. Lu had examined and treated April several times since April's birth. Neither Dr. Lu, nor anyone else, indicated that April provided false information when asked about her health. Consequently, April's response concerning her injury should be considered as truthful as any adult's.

The fact Dr. Lu's questions were leading does not destroy the admissibility of the examination. As the *Gant* court notes, doctors regularly ask questions of patients. These questions are specifically designed to determine the causes of the injury. Any responses thereto which relate to the injury could not be understood without the accompanying question. The form of the question should only go to the weight, not the admissibility, of the evidence.

Also, the identity of the molester was relevant to the doctor's treatment because the molester was the direct cause of the injury. A doctor must know the cause of the injury in order to treat the patient. A doctor cannot simply give an abused child an antibiotic and expect the infection to dissipate if the child will be subject to repeated abuses at home. Under such circumstances, the doctor's treatment would be an exercise in futility. Thus, any questions and responses which identified the perpetrator of the child abuse are relevant to treatment and should have been admitted under the treating-physician exception to the hearsay rule.

■ We also agree with the mother's fourth argument that the testimony of the mother and Dr. Lu, which recounted the questioning of April by Dr. Lu, concerning the sexual abuse and the identity of the perpetrator, should have been admitted under the spontaneous declaration exception to the hearsay rule.

Three factors must be present before a statement can come within the spontaneous declaration exception: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. *People v. Chatman* (1982), 110 Ill. App. 3d 19, 26, citing *People v. Poland* (1961), 22 Ill. 2d 175, 181.

We are aware of a general liberalization of the spontaneous declaration exception in its application to the statements of children of tender years. (*People v. Miller* (1978), 58 Ill. App. 3d 156, 158-61; see also *People v. Chatman* (1982), 110 Ill. App. 3d 19; *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 1053-55.) For example, the first factor, that the statement be spontaneous and unreflective, does not require that the event and the declaration be contemporaneous. The question is whether the circumstances exclude premeditation and design. (*People v. Cherry* (1980), 88 Ill. App. 3d 1048, 1055.) If the statement occurs after the event, it can be considered "spontaneous" where there is an indication that the stress created in the child by the event is still present at the time the statement is made. Under such circumstances, the stress activates the original sensations of the event in the memory of the child. Testimony that the child still appeared "nervous" or "distraught" and that there was a reasonable basis for continuing emotional upset will often suffice. (See *People v. Chatman* (1982), 110 Ill. App. 3d 19, 26, citing McCormick, Evidence sec. 297, at 706 (2d ed. 1972).) Also, the fact the statement was a response to detailed inquiries which probe for the existence of specific criminal activity does not destroy the unreflective or spontaneous character of the statement. *People v. Grover* (1983), 116 Ill. App. 3d 116, 120.

The second factor, absence of time to fabricate, goes to the motivations of the declarant rather than the declarant's perceptions. Illinois courts have recognized the special circumstances which exist concerning the motivations behind the statements of very young children. The basic rationale for the admission of their statements is that it is unlikely that a child of tender years will have any reason to fabricate stories of attacks. See, *e.g., People v. Chatman* (1982), 110 Ill. App. 3d 19.

In the instant case, April was not simply an occurrence witness to the event. She was the victim of the abuse. Child-abuse cases demand an even greater respect for the reliability of the child's statements. The likelihood that April fabricated or misperceived her sexual experience is slight to nonexistent.

In child-abuse cases, Wisconsin courts have long recognized that a broad and liberal interpretation should be given to what constitutes a spontaneous declaration when applied to young children. (*State v. Padilla* (Wis. App. 1982), 110 Wis. 2d 414, 329 N.W.2d 263.) The Wisconsin courts have noted that the stress of the event will remain with the child long after it occurred and that the child's statements will be unfabricated for three reasons. First, a child is apt to repress the incident. Second, it is often unlikely that a child will report this kind of highly stressful incident to anyone but the mother. Third, the characteristics of young children work to produce declarations free of conscious fabrication for a longer period after the incident than adults. It is unlikely a young child will review the incident and calculate the effect of the statement. *State v. Padilla* (Wis. App. 1982), 110 Wis. 2d 414, 419, 329 N.W.2d 263, 266.

In the instant case, April's statements are in the form of head nods to specific questions asked by her doctor, in the presence of her mother, approximately two months after the alleged abuse. While a child may forget a trip to the movies or to the zoo after two months, we do not believe a child will forget the experience of being subject to sexual molestation. April became upset when Dr. Lu questioned her about the event. April's disposition evidenced the type of emotions which would be produced by the activation of the stress which developed from the event, and the activation of her memories of that event. In this respect, her actions and responses concerning the event can be considered unreflective and spontaneous.

The fact April only nodded her head in agreement with the doctor's inquiries does not destroy the statement's admissibility. As noted above, with regard to the third issue, the form of the inquiry should only go to the weight, not the admissibility of the evidence. In

*Bertrang v. State* (1971), 50 Wis. 2d 702, 705-06, 184 N.W.2d 867, 869, the mother testified that she asked her daughter, "Did your dad do something?" to which the child responded, "Yes." This dialogue was held admissible. Likewise, absent any showing that April tends to fabricate answers about her injuries, we hold that the doctor's questions and April's responses concerning the alleged sexual abuse are admissible under the spontaneous declaration exception.

It is important to note that the instant case is not a criminal proceeding against the father. Nor is this a proceeding to terminate the father's parental rights. This is a civil, post-divorce, proceeding in which the trial court has been called upon to formulate a visitation and custody arrangement. The primary concern of the court is to devise an arrangement which will best serve the welfare of the child. The needs and desires of the parents are secondary. In this proceeding, a factual issue has been raised by the allegation of child abuse.

In abuse cases, the eyewitness statement of the youngster may be the only direct link between the child and the offender because the offense usually occurs in private. Any other evidence is generally circumstantial physical evidence that indicates only that abuse was committed. (See *State v. Gilbert* (1982), 109 Wis. 2d 501, 516, 326 N.W.2d 744, 751.) Also, a young child may be unwilling to testify at trial, or at least inhibited from doing so from a feeling of fear or shame, or as a result of the strangeness of the courtroom surroundings. (See *Bertrang v. State* (1971), 50 Wis. 2d 702, 707-08, 184 N.W.2d 867, 870.) Consequently, the child's welfare is best served by a liberal interpretation of the treating physician and spontaneous declaration exceptions to the hearsay rule in order to provide the fullest record possible concerning the alleged abuse. In this opinion, we hold that April's answers and the doctor's questions are admissible. We do not evaluate the credibility and weight to be given to April's statements. Credibility and weight is a finding which is left to the discretion of the trier of fact.

For the reasons set forth above, we reverse the order of the lower court which refused to reinstate the testimony of the mother and Doctor Lu.

Reversed.

BARRY and STOUDER, JJ., concur.