*In re* MARRIAGE OF WILLIAM R. HAZARD, Petitioner-Appellant and Cross-Appellee, and ALYCE JEAN HAZARD, Respondent-Appellee and Cross-Appellant.

First District (3rd Division)   No. 86—3424

Opinion filed March 2, 1988.

Joel S. Ostrow, of Chicago, for appellant.

Alex Devience, Jr., Ltd., of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

This appeal arises out of a custody determination regarding three minor children and an award of attorney fees in connection with the judgment of dissolution of marriage of the parties, William R. Hazard and Alyce Jean Hazard. The trial court awarded custody of the parties' 12-year-old son to the husband-petitioner and custody of the parties' 11- and 14-year-old daughters to the wife-respondent. Additionally, the trial court ordered the husband to pay $12,000 in attorney fees on behalf of the wife. The husband appeals the custody determination regarding the parties' daughters, the award of attorney fees to the wife, and the court's striking of certain testimony at trial.

For the reasons stated below, we affirm the judgment of the circuit court.

The evidence at trial indicated the following. The parties were married on November 30, 1968, in Evanston, Illinois. In October 1972, the parties adopted Kathleen Hazard, born August 31, 1972. In May 1974, they adopted Travis Hazard, born April 28, 1974. Andrea Lynn Hazard was born of the marriage on September 8, 1975. On May 14, 1984, the husband filed a petition for dissolution of the marriage.

After some contested preliminary matters, the cause was assigned to Judge Monica Reynolds for pretrial proceedings regarding child custody and other matters. At the request of the husband, the Isaac Ray Center, which is associated with the department of psychiatry of Rush-Presbyterian Saint Luke Medical Center, was directed on May 2, 1985, to conduct an evaluation of the parties and the children pursuant to Supreme Court Rule 215(a) (87 Ill. 2d R. 215(a)). Pursuant to a petition filed September 23, 1985, the husband requested a second evaluation. On October 10, 1985, Judge Reynolds ordered the Department of Supportive Services to conduct a home study and appointed Dr. Jack Arbit to conduct a diagnostic evaluation of the parties and the minor children. Upon completion of the court-ordered evaluations,

the matter was set for trial before Judge John Beatty on October 1, 1986.

At trial the husband called several witnesses. Gale Kaplan, a clinical psychologist, testified that on March 17, 1986, she performed a diagnostic interview of the husband. Regarding parenting skills, Kaplan found that the husband was "able to really zero in on *** the strengths and the vulnerabilities of each child." She described him as having a "genuine empathy" for the children. She stated that the husband perceived his son identifying with him. Further, the younger daughter identified mainly with the wife, and the husband perceived the older daughter as being "torn in the middle." Kaplan stated that there was no indication that the husband would not be able to provide for the children's emotional, physical, and financial needs. As she had not interviewed either the wife or the children, Kaplan made no specific recommendation as to custody.

The husband also called Edlynne Sillman, a caseworker for the Cook County Department of Supportive Services, who prepared a report regarding the subject family in response to a court order. Sillman interviewed the husband, wife, and children while they were all living in the same household. Additionally, she interviewed a family friend, the wife's sister, and the wife's mother. She also talked to the husband's daughter from a prior marriage. Sillman found that the husband could be available whenever the children needed him. She stated that his work schedule would be flexible. Sillman's conclusion regarding custody of the children, however, was stricken by the trial court as being based on unreliable information.

The husband also called Marvin Schwartz, M.D., a board-certified psychiatrist. Schwartz interviewed the husband and the children and observed them interacting with each other. Schwartz formed opinions regarding the emotional states of the husband and the children. Further, Schwartz gave an opinion regarding the husband's ability to be a parent to the children. Schwartz found the children to be "warm, positive and supportive of each other" and found the relationship between the children and their father to be "warm, positive, affectionate and appropriately parental." Schwartz saw in the husband a positive need to devote himself to the children. Schwartz found that the husband would do an appropriate parenting job and would not be harmful to the children in any way.

Dr. Ner Littner, M.D., a board-certified psychiatrist, testified regarding the May 16, 1986, report he prepared based on his evaluation of the parties and the children. Littner did not make a recommendation in the May 1986 report regarding custody of the parties' chil-

dren. The report states that Littner believed that there was no reason why the husband could not be considered an appropriate parent. Littner first saw the husband in June 1984 to request an evaluation of his children regarding whether they needed psychotherapeutic help. Littner stated that he never interviewed the children. His May 1986 report indicates that he interviewed both parties, individually and together, talked over the telephone with Joann DeCamp and Mary Lou LuGanna, and reviewed the reports of Drs. Kaplan, Schwartz, Arbit, and Heinrich and the Isaac Ray Center. Littner stated that he prepared an addendum report on September 5, 1986. In the September report Littner made a recommendation regarding custody. However, upon the wife's motion, the trial court ordered that Littner's September 1986 report be stricken from evidence.

The husband also called Lawrence Heinrich, a psychologist, to testify. Heinrich interviewed each child and prepared written reports regarding his findings. Heinrich found that the children were suffering from "mild anxiety," "moderate depression," and "considerable stress." Travis, the parties' son, told Heinrich that if he had to choose, he would prefer to live with his father. The parties' daughters did not state a preference regarding which parent they would prefer as their custodial parent. Heinrich did not express an opinion regarding custody of the children. Heinrich recommended that the children undergo counseling to help relieve their stress.

Mary Lou LuGanna, the wife's sister, testified that the children had a "very good, very affectionate" relationship with their father. She believed that the parenting skills of the father would serve the needs of the children better than the mother's. LuGanna based her opinion on her observations of the children while they visited her at her home in Massachusetts. LuGanna saw the children four times for approximately a week each time between 1984 and 1986.

Joann DeCamp, a family friend who had been a roommate of the wife during college, testified that she lived in the same building as the parties since the time that the children were very young. The children spent every Friday and Saturday with DeCamp over a period of 12 to 13 years, and DeCamp accompanied the family on several vacations. DeCamp believed that the wife "overly control[s]" the children, while the husband observes the children and allows them to control themselves. DeCamp believed that the husband always has been available for the children, and that he would be more consistent than the wife in making decisions for the children. DeCamp believed that the husband had better parenting skills than the wife. During the pendency of the instant action, DeCamp filed a motion for leave to file a peti-

tion for custody and a petition for visitation, which motion was denied by the trial court.

Harold David Greenwood, a football coach for the parties' son, testified that the husband attends football practice three to five times per week and that the husband is supportive of the boy. Greenwood observed nothing detrimental in the relationship between the boy and his father during the two years that Greenwood has observed them.

Andrea Kreeger, the husband's daughter from a previous marriage, testified that she lived with the parties in their home on weekends from the time she was 10 until she became 17 years old and got married. Kreeger was 28 years old when she testified. Kreeger stated that while she lived with the parties, the wife treated her well "as long as I did exactly what she wanted." Sometimes the wife became angry with Kreeger. The wife would set a schedule for Kreeger and the parties' three children regarding when they would go to bed, get up, and eat. Kreeger sometimes babysat the parties' children during the time from 1979 to 1981. On those occasions, the wife always left written instructions regarding the hourly schedule of the children's activities. Kreeger stated that her relationship with her father had been good while she was growing up and that he had been attentive to her. Kreeger believed the relationships among the parties and their three children were similar to her relationships with each of the parties.

Jack Arbit, a clinical psychologist, testified regarding his evaluations of the parties and the children which he performed at the request of the court. Arbit concluded that both parents were "fit" custodians for the children. While the father would be "an acceptable custodial parent," Arbit recommended that the mother be given custody of the three children, since she would be more able to meet their needs.

Karen G. Meyer, a social worker for the Isaac Ray Center, testified that she interviewed the parties and their children and participated in the team approach evaluation of the parties and the children which is described in the Isaac Ray Center report.

Dr. Maurice Rosenthal, a psychiatrist and panelist for the Isaac Ray Center, testified that he performed some initial interviews of the parties and the children with social worker Karen Meyer. He stated that his observations and opinions are incorporated into the Isaac Ray Center report. The Isaac Ray Center report provided a recommendation regarding custody of the three children. At trial, however, the court excluded the recommendation from evidence since it was based on unreliable information from third parties.

The trial conducted *in camera* interviews of the children. The eldest, a daughter, expressed no preference regarding which parent she would like to live with. The second child, the boy, stated that he preferred to spend time with his father. The third child, the younger daughter, stated that she would prefer to live with her mother.

The parties testified in open court. The husband testified that he is a professor of education and policy studies at Northwestern University. The wife was unemployed and testified that she has remained at home since 1972 to care for the children.

Initially we address the husband's contention that the trial court erred in striking certain testimony given by Edlynne Sillman and Dr. Ner Littner. During the pendency of the trial, the wife moved to strike the testimony and those portions of the reports of Dr. Littner regarding his recommendation for custody. The trial court granted the motion to strike based on Littner's cross-examination testimony that he did not follow standards of his own profession in arriving at his opinion regarding custody. Littner admitted that he relied on the reports of other persons, such as the report by Edlynne Sillman, even though the standards of his profession require him personally to interview the people involved or to base his conclusions on reliable medical evidence or certain other reliable evidence. The court cited Federal Rule of Evidence 703 in granting the motion.

■ We hold that the trial court properly excluded the testimony of Dr. Littner, as it was based on evidence which is considered unreliable according to the standards of the psychiatric profession. In *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, our supreme court adopted Federal Rule of Evidence 703, which expressly permits an expert witness to give his opinion on the basis of facts not in evidence, so long as those facts are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." (Fed. R. Evid. 703; *Wilson v. Clark*, 84 Ill. 2d at 193; *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478 N.E.2d 1057.) By Littner's own admission, he failed to follow the standard or recommendation of the Board of Psychiatry in forming his opinions regarding custody which are contained in his September 1986 report. Therefore, the trial court properly acted in striking from evidence the September 1986 report.

Also during the pendency of trial, the wife objected to the admission into evidence of Edlynne Sillman's conclusion regarding custody on the ground that the conclusion is based on hearsay information. Sillman testified that, after interviewing the parties and the children,

she had not yet formed any conclusion regarding custody. She formed her conclusion only after she talked to additional sources, including relatives and friends of the family, whose names were provided by the husband. Counsel for the wife argued that the portions of the report which were not based on Sillman's conversations with the parties and the children were hearsay and should be stricken. The trial court ruled that those portions of Sillman's report that refer to witnesses who were not called to testify at trial and the conclusion of Sillman regarding custody would be stricken from the report. Those portions of the report based on Sillman's personal observations and on the information gathered from witnesses who testified at trial were admitted into evidence.

The husband contends on appeal that Sillman should be considered an expert in evaluating contested custody matters, because of her position as a caseworker and her experience in the field. The husband argues that under the rules adopted in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, Sillman's conclusion and the contents of her report should have been admitted into evidence. We hold that the trial court in the instant case properly relied on *In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912, in making its ruling. The court in *Theis* notes that *Wilson v. Clark* deals with testimony of experts based upon medical records, not with the admission of the records themselves. (*In re Marriage of Theis*, 121 Ill. App. 3d at 1094.) Also, even assuming that Sillman could be considered an expert, a foundation must first be laid to demonstrate that the trier of fact needed the assistance of an expert opinion, as contrasted with evidentiary facts, in order to decide an issue. (*In re Marriage of Theis*, 121 Ill. App. 3d at 1095.) As was the case in *Theis*, such an indication is lacking in the instant case.

Section 605 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 605) allows a trial court to order an investigation and report concerning the custodial arrangements for the children. The report may be used by the court in determining custody and the preparer of the report is subject to cross-examination. (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912; see also *In re Marriage of Slavenas* (1985), 139 Ill. App. 3d 581, 487 N.E.2d 739.) The section 605 report, however, is only evidence of what the investigator observed and of his conclusions concerning suggested custody arrangements based upon those observations. Any underlying facts contained in the report which are outside the personal knowledge of the investigator are hearsay. (*In re Mar-*

*riage of Theis*, 121 Ill. App. 3d at 1095.) Therefore, the information contained in Sillman's report which was received from third parties or otherwise is outside the personal knowledge of Sillman is hearsay and was properly stricken by the trial court. See also *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811.

The husband also contends on appeal that the trial court abused its discretion by awarding custody of the parties' two daughters to the wife when such a result was contrary to their best interests as indicated by the manifest weight of the evidence.

■ In child custody proceedings, the best interest of the child is of paramount concern. (Ill. Rev. Stat. 1985, ch. 40, par. 602(a); *Lloyd v. Lloyd* (1980), 92 Ill. App. 3d 124, 415 N.E.2d 1105.) The trial court is vested with broad discretion because of its superior opportunity to observe the witnesses and evaluate the evidence. (*In re Marriage of Werner* (1986), 144 Ill. App. 3d 263, 493 N.E.2d 1199.) A strong presumption exists in favor of the trial court's determination of custody. (*In re Marriage of Werner*, 144 Ill. App. 3d at 270.) The court's determination will be reversed only if it has clearly abused its discretion or its decision was contrary to the manifest weight of the evidence. *In re Marriage of Stuart* (1986), 141 Ill. App. 3d 314, 318, 490 N.E.2d 243, 246; *Lloyd v. Lloyd* (1980), 92 Ill. App. 3d 124, 415 N.E.2d 1105.

The Illinois Marriage and Dissolution of Marriage Act provides that, in determining the best interest of a child, the court shall consider all relevant factors, including the following:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child."

Ill. Rev. Stat. 1985, ch. 40, par. 602(a).

The husband in the instant case asserts that the wife's alleged "moodiness" and "rigidity" and her refusal to take the children for emotional therapy support a custody determination in favor of the husband. The husband notes that during trial, the wife was questioned

regarding, among other things, several instances where she allegedly raised her voice, called the husband names, and threw an object and slammed a door after she had been drinking wine. Additionally, the husband points to the eldest child's expressed wish to spend time with Joann DeCamp, and the child's apparent concern that her mother might not allow her to see Ms. DeCamp as often as the child would like. The husband contends that Ms. DeCamp provided emotional support for the children when their mother did not. Finally, the husband asserts that the "only negative thing" elicited at trial regarding the husband's suitability as custodian was the Isaac Ray Center report that indicated that he would not be as physically available to the children as would the wife because of his job. The husband notes, however, that the Isaac Ray Center report also indicates that his schedule could be altered easily.

■ We hold that the custody determination was not against the manifest weight of the evidence nor does it constitute an abuse of the trial court's discretion. The record indicates that the trial court considered the relevant statutory factors in making its determination. For instance, the trial court was aware that each of the parties expressed a wish for custody of the three children. The court, however, also considered the expressed wishes of the children. The parties' son indicated that he would prefer to live with his father, as he seemed to share more common interests with his father than with his mother. The parties' youngest child, a daughter, stated that she would prefer to live with her mother. The eldest child, a daughter, stated that she could not or did not wish to state a preference regarding which parent she would prefer as her custodian.

Traditionally, courts have held that a custody order that separates children is not considered in their best interests, but it occasionally can be. (*In re Marriage of Slavenas* (1985), 139 Ill. App. 3d 581, 487 N.E.2d 739; *Uluhogian v. Uluhogian* (1980), 86 Ill. App. 3d 654, 408 N.E.2d 107.) In the instant case the trial court's determination that it was in the boy's best interest to live with his father and in the girls' best interests to live with their mother was not against the manifest weight of the evidence. We note that the judgment provides that the children will spend weekends and holidays together.

The evidence also indicated that the relationships among the children were friendly and affectionate. Both the wife and the husband were found by the trial court to be in good health. Further, after considering all of the evidence, the trial court did not find that either party would be an unfit custodial parent. The evidence also indicates that the children were healthy. Further, during an *in camera* inter-

view with the parties' older daughter, the trial court discussed the daughter's relationship with Joann DeCamp and acknowledged the daughter's desire to continue to see Ms. DeCamp. During *in camera* interviews, the trial court also questioned all three children regarding school, friends, and home life. The court also had the benefit of the testimony of experts, friends and relatives of the family.

While the husband asserts that the wife demonstrated some violence, there was little if any evidence that the arguments of the parties referenced by the husband adversely affected the emotional or physical health of the children. The wife testified that there were only two isolated instances in which she raised her voice toward her husband during an argument between them. The wife testified that the children were not present on those occasions. The alleged incidents certainly do not rise to the level of conduct of the parent described in *In re Custody of Williams* (1982), 104 Ill. App. 3d 16, 432 N.E.2d 375, cited by the husband to support denial of custody to the wife. Additionally, the husband's allegations of an apparent alcohol problem of the wife were refuted at trial. The weight of the evidence at trial indicated that the wife was loving and caring toward her children.

Further, the testimony at trial supported the finding that any anxiety being experienced by the children was the result of tension between their parents at home and of the dissolution proceedings. The visitation provisions in the judgment for dissolution state that the children will undergo counseling to help alleviate any anxiety and stress. We find that the trial court's determination was proper in view of the evidence and failed to constitute an abuse of discretion.

■ Finally, the husband contends that the trial court's award of $12,000 in attorney fees to the wife was contrary to the manifest weight of the evidence and contrary to law. We note that section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(3)) provides that the trial court may order either party to pay a reasonable amount for attorney fees necessarily incurred by the other party in any proceeding under the Act. An award of attorney fees is justified where the spouse seeking relief demonstrates (1) financial inability to pay, and (2) the ability of the other spouse to pay. (*In re Marriage of Ryan* (1985), 138 Ill. App. 3d 1077, 487 N.E.2d 61.) Financial inability exists where payment would strip the person of the means of support and undermine her economic stability. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.) The award of attorney fees is within the sound discretion of the trial court and the court's decision will not be disturbed absent a clear abuse of discretion. *In re Marriage of Sevon*

(1983), 117 Ill. App. 3d 313, 453 N.E.2d 866.

■ The trial court in the instant case failed specifically to state in the judgment for dissolution of marriage that the wife was unable to pay the attorney fees and the husband was able to pay the fees. However, the record indicates that detailed evidence was brought which supports a finding that the wife was unable to pay and the husband was able to pay the fees. The record indicates that each of the parties received $50,000 from the redemption in or around May 1984 of certificates of deposit held as marital property. At trial the wife testified that she had spent approximately $41,000 of the $50,000 on family and personal expenses and toward payment of her attorney fees. The wife had a savings account with a balance of $9,500 and was awarded the marital home in Evanston and a Wisconsin farm. The wife had no other income, although at trial she indicated that she was willing and able to pursue again her profession as a teacher of special education courses, for which she earned approximately $11,500 gross income in 1971.

The husband, on the other hand, had a net monthly income at the time of trial of $2,800 ($33,600 annually). He was awarded two parcels of land in Evanston, an Antioch, Illinois, parcel of land, and some real estate in Chicago. He was responsible for any of the mortgages on the property awarded in the distribution by the court and for outstanding utility, medical, and educational expenses for the family. However, the husband was ordered to pay the future ordinary medical expenses only for the parties' son, while the wife was ordered to pay any ordinary future medical expenses for the two daughters.

The husband was ordered to pay $700 per month in child support for the two daughters. The wife was ordered to pay $10 per month in child support for the parties' son. College educational expenses were to be paid by both parties within their financial ability to do so. The husband also was ordered to pay the wife $750 per month for 36 months as rehabilitative maintenance.

We find that the trial court's order directing the husband to pay the remaining $12,000 in attorney fees is not an abuse of discretion. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866.) The evidence indicates that requiring the wife to pay the attorney fees will undermine her economic stability. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.) While the wife is receiving maintenance and the daughters who live with her are receiving child support from the husband, those amounts are intended to help pay for regular ongoing expenses. Since at the time of trial the wife had no income outside a minimal amount of interest from her

$9,500 savings account, the payment by her of an additional $12,000 in attorney fees would be unduly burdensome. The husband, on the other hand, had a steady income and the evidence indicates that he would be able to pay the fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and McNAMARA, J., concur.