STATE OF NEBRASKA, APPELLEE, V. CLIFFORD RED
FEATHER, APPELLANT.

289 N. W. 2d 768

Filed March 11, 1980.   No. 42880.

Terri S. Diem, for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The defendant, Clifford Red Feather, also known as "Woody," was convicted of first degree sexual assault and sentenced to 8 to 15 years imprisonment in the Nebraska Penal and Correctional Complex. He has appealed and contends the trial court erred in admitting hearsay testimony into evidence, in overruling his motion to dismiss, and in overruling his motion for a new trial.

The evidence shows that in the late evening of October 14, 1978, a 7-year-old girl was sexually assaulted. Her mother returned home at approximately 11:45 p.m., to find the victim crying and bleeding profusely from between her legs. The victim said to her mother, "Look what Woody done to me."

Her mother ran into one of the bedrooms and found the defendant still lying on the bed. Bloody clothes of both the victim and defendant and blood-stained and semen-stained blankets and clothing were found in the bedroom. The mother then ran out of the house to call the police. At this time the defendant fled the scene.

Officer Guy Hielscher and Officer George Schefcik responded to the call. Both officers approached the house and found the victim at the door crying. When asked why she was crying, she told the police officers "Woody made me bleed." While Officer Hielscher checked the area for evidence, Officer Schefcik accompanied the victim and her mother to the hospital emergency room.

The victim was treated by Dr. Donald E. Wilkinson, who found her distraught, anxious, and frightened. Dr. Wilkinson first observed that she was lying in a large pool of blood. He questioned her about what had happened and she replied, "Woody did it." Upon further questioning by Dr. Wilkinson she explained that she had been sleeping on the couch in her home. Neither of her parents were there. She stated that Woody picked her up and carried her into the bedroom where he removed her pants. Pointing to her vagina she said that Woody had "put his finger in down there," and, "He got on top of me." Dr. Wilkinson found that she had sustained a massive laceration extending from the mouth of the vagina along the full length of the vagina, then splitting into a Y-shaped laceration around the cervix. The laceration was repaired

surgically by Dr. Wilkinson.

The defendant claims the corroboration evidence was insufficient. In addition to the numerous complaints of the victim, made soon after the assault, to her mother, the police officers, and Dr. Wilkinson, the evidence as to the discovery of the defendant in the bedroom by the victim's mother, together with the blood-stained and semen-stained blankets and clothes, was sufficient evidence of corroboration. It is sufficient if the prosecutrix is corroborated as to material facts and circumstances which support her testimony as to the principal fact in issue. State v. Rhodes, 201 Neb. 576, 270 N. W. 2d 920 (1978).

The defense was an alibi. The evidence of the State was clearly sufficient, if believed, to establish the guilt of the defendant beyond a reasonable doubt.

The defendant further contends that the testimony of the police officers and Dr. Wilkinson as to the statements of the victim was hearsay and therefore not admissible. He argues, in the alternative, that if the evidence was admissible as a recognized exception to the hearsay rule, its admission into evidence violated his constitutional right of confrontation. Under the facts of this case we do not agree.

When the police arrived at the victim's home approximately a half hour after the assault had occurred, they found the victim bleeding, crying, and in a highly emotional state. When Hielscher asked what had happened, she replied, "Woody made me bleed." The testimony at trial by Hielscher to this effect was admissible under the excited utterance exception to the hearsay rule. § 27-803 (1), R. R. S. 1943. To qualify as an excited utterance the following must exist: (1) There must have been a startling event; (2) the statement must relate to the event; and (3) the statement must have been made by the declarant while under the stress of the exciting event. State v. Reed, 201 Neb. 800, 272 N. W. 2d

759 (1978). A statement to police officers by a 7-year-old girl, made a short time after she was sexually assaulted, relating to the sexual assault, qualifies as an excited utterance.

The statements made by the victim to the emergency room physician were also admissible. The victim was brought to the hospital emergency room as quickly as possible. When she arrived at the hospital, the evidence shows that she was upset, anxious, crying, and bleeding profusely. Her statements to Dr. Wilkinson were made in response to questioning to ascertain the nature and cause of her injury and to obtain a medical history. Statements to a physician which bear upon the nature and cause of the injury are admissible under section 27-803 (3), R. R. S. 1943, insofar as they are reasonably pertinent to diagnosis or treatment. 4 Weinstein's Evidence, 803-125 (1979). That portion of the statement which related that the assailant put his fingers into her vagina and got on top of her was clearly admissible under the medical diagnosis exception.

While the entire statement to Dr. Wilkinson may not have been reasonably pertinent to diagnosis or treatment, the statement was also an excited utterance. State v. Reed, *supra*. Although the statements were made approximately one hour after the assault, time alone is not the decisive factor. The crucial point is that there was not time for conscious reflection. 4 Weinstein's Evidence, 803-84 (1979).

The testimony of Dr. Wilkinson as to the statement identifying the defendant was at most cumulative. Whether or not cumulative evidence constitutes reversible error depends upon the facts and circumstances of each case. State v. Jackson, 200 Neb. 827, 265 N. W. 2d 850 (1978). In view of the other evidence which had already been received, the testimony was not prejudicial.

The defendant further claims that admission of the testimony as to the statements of the victim violated

his right of confrontation. The victim was present in court and was subjected to cross-examination. The confrontation clause is not violated by admitting out-of-court statements where the declarant testifies and is subject to cross-examination. See, California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); State v. Saltzman, 194 Neb. 525, 233 N. W. 2d 914 (1975).

Finally, the defendant complains that the trial court incorrectly permitted testimony pertaining to admissions made by the defendant at the time of his arrest because no Miranda warnings had been given. The arresting officer testified as follows: "A. Well, I observed Woody laying under some blankets and I pulled the blankets back and I said, 'Woody, you're under arrest.' Q. What else did you say? A. And Woody says, 'What for?' And I says, 'You're under arrest for raping Stella Sanchez' daughter.' And he says, 'How do you know I did that?' And I says: I got your evidence — I've got evidence. I've got your fingerprints in blood. And he says, 'You got me.' And then we removed him from the house."

"In Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966], the United States Supreme Court held specifically that volunteered statements of any kind are admissible without prior explanation of the defendant's rights." State v. Torrence, 192 Neb. 213, 219 N. W. 2d 772 (1974), cert. den., 420 U. S. 928, 95 S. Ct. 1127, 43 L. Ed. 2d 399 (1975). The testimony was properly admitted as a spontaneously volunteered statement of the defendant.

The judgment of the District Court is affirmed.

AFFIRMED.