STATE OF NEBRASKA, APPELLEE, V. IPALIBO GEORGE WOKOMA, APPELLANT.

445 N.W.2d 608

Filed September 15, 1989.   No. 88-767.

Dennis R. Keefe, Lancaster County Public Defender, and Joseph D. Nigro for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

On May 20, 1988, in the district court for Lancaster County, defendant-appellant, Ipalibo George Wokoma, was convicted by a jury of sexual assault in the first degree under Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1985). Under that statute, any person who subjects another person to sexual penetration, and the actor is 19 years of age or older and the victim is less than 16 years of age, is guilty of a Class II felony. Defendant was sentenced to imprisonment of not less than 4 nor more than 10 years.

Defendant timely appealed to this court, assigning as error only the district court's action in finding there was sufficient evidence to support the jury's verdict. We affirm.

The record shows the following. Defendant was sexually involved with the victim's mother and lived with the victim and her mother at various locations in Lincoln, Nebraska, from July 1984 to August 1985. Defendant married another woman on March 13, 1986, but continued to visit the victim's mother at her residence on several occasions thereafter, and in particular on two occasions during April 1987, when defendant was 24 years old and the victim was 13. The victim testified that during the time when the defendant lived in the same household with the victim and her mother there were many sexual assaults on the victim by defendant but that the incidents were indistinguishable in her memory. The assaults involved both penile and digital penetration, which caused the victim pain and caused her to bleed from her vagina.

The victim testified specifically to two sexual assaults on her by defendant in April 1987. On the first occasion, the defendant

came over to visit the victim's mother at about 1 a.m. After the defendant arrived, he went with the victim's mother into the victim's mother's bedroom. The victim was sleeping on the couch in the living room, which was a short distance from the mother's bedroom. After a short time the phone rang. While her mother was talking on the phone in the bedroom, the defendant came into the living room, began touching the victim, and digitally penetrated the victim. When the defendant heard sounds from the bedroom indicating the victim's mother was getting up from the bed, the defendant ceased and ran into the bathroom. Later that morning, the mother escorted the defendant out of the house.

On the second occasion in April 1987, the defendant again came to the victim's residence at about 1 a.m. The victim's mother was expecting the defendant and had asked the victim to hide the mother's purse. The defendant appeared to be drunk and went with the victim's mother into the mother's bedroom. After a time, the defendant came into the living room, where the victim was resting, and penetrated the victim both digitally and with his penis. Afterward, the defendant returned to the mother's room.

The victim testified that she did not complain of the assaults until after this second assault in April 1987. The victim testified that she was afraid to reveal the assaults to her mother, who frequently beat and whipped her. She also stated that the defendant told her she would be beaten if she told.

The day after the second April 1987 assault, the victim was upset and told her friend at school that the defendant had assaulted her. The friend wanted to call the victim's mother, but the victim did not want her to because she was afraid she would be punished.

On approximately April 24, 1987, the victim was removed from her mother's care because of physical abuse and placed with a foster family. The victim's foster mother immediately noticed a strange odor emanating from the victim. The foster mother at first thought the odor was caused by the victim's shoes or clothes or that the victim was not washing herself well enough. Finally, on a family trip in late May 1987, the foster parents determined that the odor was so bad that they should

discuss it with the victim. The foster mother had a discussion with the victim and discovered that the odor came from the victim's vagina. At this time, the victim also revealed to her foster mother the assaults by the defendant.

Consequently, in early June 1987, the victim was taken to a physician. The victim was diagnosed as having trichomonas infection, a sexually transmitted disease. The victim first noticed the discharge associated with the disease as early as October 1984. The victim was given an antibiotic to treat the infection.

The defendant testified and denied the assaults. There is no evidence that either the defendant, his wife, or the victim's mother has ever been diagnosed as having trichomonas infection. However, the defendant indicated on a medical history taken December 30, 1986, that he had problems with a discharge from his penis and a burning sensation during urination. He also complained of a discharge from his penis during a May 1, 1987, doctor's examination. During the May 1 examination, the defendant tested negatively for chlamydia and gonorrhea, but defendant's physician testified such tests will not reveal the presence of trichomonas. As a result of his May 1987 examination, the defendant was treated with a broad-spectrum antibiotic.

The victim's physician testified that a male infected by trichomonas could experience either no symptoms, have a penis discharge, or have a burning sensation during urination. The victim's physician also testified that adult immune systems are often able to combat trichomonas infection but that children often require medication to be cured. The evidence relating to the infection, if believed by the jury, was consistent with both the defendant's and the victim's being infected with the disease.

Defendant contends that "[i]t becomes clear that the evidence is insufficient to support a verdict of guilty when inconsistencies in [the victim's] story are considered along with other facts in evidence which support the defendant's version rather than the version of [the victim]." Brief for appellant at 6.

In evaluating that contention, this court's standard of review is that a judgment of conviction will not be reversed on appeal

unless the evidence supporting the conviction is so lacking in probative force that it is insufficient as a matter of law. *State v. George*, 228 Neb. 774, 424 N.W.2d 350 (1988); *State v. Schott*, 222 Neb. 456, 384 N.W.2d 620 (1986).

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, this court does not resolve conflicts in the evidence, determine the plausibility of explanations, or weigh the evidence. Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989); *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988). The State is not required to disprove every hypothesis but that of guilt. *State v. Reed*, 228 Neb. 645, 423 N.W.2d 777 (1988).

Applying those rules, the evidence as shown in the record, if believed by the jury, is clearly sufficient to support the verdict of guilt. As required at the time of defendant's conviction, the victim's testimony as to the crime was fully corroborated by the testimony of the victim's school friend, by the testimony of the victim's foster mother, and by the circumstances of the presence of a sexually transmitted disease in the body of the victim. The judgment of conviction is affirmed.

AFFIRMED.