STATE OF NEBRASKA, APPELLEE, V. THOMAS M. PLANT,
APPELLANT.
461 N.W.2d 253

Filed October 5, 1990.   No. 89-094.

318

Thomas P. McKenney for appellant.

Robert M. Spire, Attorney General, and Marie C. Pawol for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

FAHRNBRUCH, J.

The defendant, Thomas M. Plant, appeals his Douglas County jury convictions for the second degree murder of his

18-month-old stepson and for the first degree assault and child abuse of his 4-year-old stepson. We affirm.

Plant received a life sentence for the second degree murder of 18-month-old Christopher Bartlett, his stepson; not less than $6^2/_3$ nor more than 20 years for first degree assault; and not less than 1 nor more than 3 years for child abuse. The assault and abuse sentences were concurrent with each other and consecutive to the murder sentence.

In his appeal, the defendant claims, in substance, that the trial court erred (1) in failing to suppress evidence obtained as a result of a warrantless entry into his home; (2) in receiving allegedly inadmissible hearsay evidence, i.e., out-of-court statements of Plant's 4-year-old stepson and of the defendant's own 4-year-old daughter relating to the death of the one stepson and the infliction of injuries to the second stepson; and (3) in failing to find that the admission of his daughter's and stepson's hearsay statements denied the defendant his constitutional right of confrontation.

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Bohan*, 233 Neb. 679, 447 N.W.2d 485 (1989); *State v. Wokoma*, 233 Neb. 351, 445 N.W.2d 608 (1989); *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

Taking the view most favorable to the State, the record reflects the following operational facts. Around 7 p.m. on May 20, 1988, Sgt. William Muldoon of the Omaha Police Division was directed to Childrens Memorial Hospital in Omaha to await the arrival by rescue squad of Christopher Bartlett, a critically injured 18-month-old child, and to conduct an investigation into the child's injuries.

Upon arriving at Childrens Memorial Hospital, Muldoon was informed that the child's stepfather, the defendant Thomas Plant, had originally taken the child by automobile to Bergan Mercy Hospital and the child was then transferred to Childrens Memorial Hospital. Between 7 and 8 p.m. on May 20, Dr. Gary

S. Lerner examined Christopher Bartlett at Childrens Memorial Hospital. At that time, there was considerable swelling on the child's forehead, accompanied by some bruising. There was a massive amount of swelling inside Christopher's head which had occurred within 5 or 6 hours of the examination. In addition to the head injury, Dr. Lerner testified, Christopher had a number of bruises; an abrasion on his chin; a number of rib fractures; a small corner fracture of the distal femur, the largest bone in the leg; and a shattered pubic bone.

Muldoon was told by physicians at the hospital that Christopher had suffered a severe brain hemorrhage and was not expected to live. The doctors said that Christopher's injuries were inconsistent with the explanation given by his parents. Christopher's mother, Gloria Plant, was present at the hospital and informed Muldoon that Christopher had fallen off a sofa while reaching for potato chips and struck his head when he fell to the floor. It was later determined that the floor in question was carpeted.

A cruiser officer told Sergeant Muldoon that he had made contact with Thomas Plant at Bergan Mercy Hospital. Plant informed the officer that he was going to his home to check on the well-being of three other children who were at the Plants' residence, that he had to arrange for a babysitter for the children, and that he would then go to Childrens Memorial Hospital. The three children were 4-year-old Cindy Plant, 4-year-old James Bartlett, and 2-week-old April Plant. Thomas Plant's mother and sister, who were at the hospital, told Muldoon that the children were at the Plants' residence. Gloria Plant stated that the children were either at home or with Thomas Plant.

The defendant called Childrens Memorial Hospital and spoke with Sergeant Muldoon at approximately 7:30 p.m. The defendant informed Muldoon that he was on his way to the hospital and that he had taken the children to a babysitter in Carter Lake, Iowa. Plant's wife, mother, and sister told Muldoon that they were unaware of any babysitter in Carter Lake. Muldoon was also advised that the Plants' home did not have a telephone.

At about the same time as Muldoon spoke with Plant, Sgt. William Connelly of the Omaha Police Division and two other police officers were dispatched to the Plants' residence to locate the three children. The officers knocked on the front and back doors of the Plants' home and announced their presence, but received no response. Connelly testified at a suppression hearing that no one appeared to be home, the lights were out, and the blinds were drawn. This information was conveyed to Sergeant Muldoon and to police headquarters. Connelly observed a car matching the description of Plant's vehicle in a parking lot across the street from the Plants' residence. However, the car was driven away before Connelly could determine the identity of the driver. Connelly remained at the Plants' home for approximately 30 to 45 minutes after the vehicle left and waited for its return.

Plant again spoke by telephone with Sergeant Muldoon between 8 and 8:15 p.m. He informed Muldoon that his car had broken down at approximately 73rd and Cedar Streets in Omaha. Muldoon advised Plant that an officer would pick him up there. Approximately 5 minutes later, when a police cruiser arrived at 73rd and Cedar Streets, neither Plant nor his car could be located.

At that time, Sergeant Muldoon, concerned about the missing children, contacted his superiors and requested that someone be sent to the Plants' residence to check on the condition of the children.

Sergeant Muldoon received word from the intensive care unit at the hospital where Christopher was being cared for that Plant had been directly calling doctors there and requesting that his relatives speak with him on the telephone.

About 9:45 p.m., Sergeant Connelly was informed by Omaha Police Lieutenant Venditte that the location of the Plant children was still unknown, that conflicting accounts of their location had been given to Sergeant Muldoon, and that Connelly should proceed to the Plants' home to again determine if the children were there. Connelly also spoke with Officer Christopher Toledo of the youth services unit. Toledo told Connelly of a recent report alleging that James Bartlett had suffered continual abuse by Thomas Plant.

Sergeant Connelly and Officer Toledo proceeded to the Plants' house, arriving there at approximately 9:55 p.m. Officer Jepsen met them at the home. The officers again received no response after knocking and announcing their presence. A next-door neighbor told Connelly that she had not seen anyone since the afternoon, when the children and their parents left in a vehicle. Connelly noted a tear in a shade in one of the windows of the Plants' home that was not present during his first visit. The officer shined his flashlight through the window and saw no evidence that anyone was home. Upon receiving a request for further instructions, Lieutenant Venditte, considering the circumstances, authorized forced entry into the Plants' home. Connelly testified that his intent in entering the home was to find the children and check on their well-being. Connelly further testified that it was not his design to make any arrests or to conduct an evidentiary search. He did state, however, that if Plant was found, he would be arrested.

About 10:20 p.m., the officers made a forced entry through the front door of the Plants' home. In a bedroom, Connelly and Toledo discovered the three children asleep on a bed and a babysitter crouching between two beds. Approximately 10 seconds later, during a standard security sweep to ensure that no one else was present, Plant was discovered fully clothed, hiding in the bathroom shower. Plant was then placed under arrest. Police did not search the home or seize any physical evidence, but photographs of the premises were taken. Early Saturday morning on May 21, 1988, all three children were taken to the University of Nebraska Medical Center for physical examination. Dr. Lyle Woerth examined James and Cindy at the emergency room of the hospital in the early morning hours of May 21. There was no evidence in the record of injuries to Cindy or April Plant.

Dr. Woerth testified that his examination of James Bartlett during the early morning hours of May 21 revealed multiple areas of swelling about the head; large bumps on the top of the skull; evidence of hair's being yanked out; swelling and bruising along the right shoulder to the neck; a 3-centimeter cut behind the right ear; multiple areas of swelling and bruising on the chest and abdomen; numerous cuts and bruises on the back;

areas of excoriation around the base of the scrotum; a swollen and tender left lower leg; a fracture of the right middle finger; a fracture of the tibia, the biggest bone in the lower leg; a shattering of the distal phalanx, the bone farthest out in the great toe, on the left foot; a fracture of the clavicle, which is the bone leading from the breastbone to the shoulder; a fracture in two places in the jaw; and three rib fractures. Dr. Woerth testified that due to the length of time over which the injuries occurred and the nature and extent of the injuries, he concluded the injuries sustained by James Bartlett were intentionally inflicted.

During their examinations, James Bartlett and Cindy Plant made a number of statements to Dr. Woerth incriminating Thomas Plant. The two children were interviewed by Sergeant Muldoon on May 22, at which time the children made further statements reflecting that the defendant was responsible for the injuries to James and the fatal injury to Christopher Bartlett.

Christopher Bartlett died 4 days after being taken to the hospital. Dr. Blaine Roffman, a pathologist who performed an autopsy on Christopher, testified that the cause of Christopher's death was a traumatic head injury. In Dr. Roffman's opinion, Christopher's injuries were not consistent with a fall from a couch onto a carpeted floor but were consistent with Christopher's being thrown headfirst against a hard surface. There was evidence from which a jury could find beyond a reasonable doubt that Christopher's fatal injuries occurred when Christopher struck his head on the floor after being thrown across a room by the defendant.

In one information, Plant was charged with the second degree murder of Christopher, and in a second information, the defendant was charged with one count of first degree assault on James and one count of child abuse involving James. The cases were consolidated for trial. Following a trial, the jury found Plant guilty of all three charges.

## ENTRY INTO THE HOME

In his first assignment of error, Plant impliedly recognizes that a police officer who has not obtained either an arrest or a search warrant cannot make a nonconsensual and warrantless

entry into a suspect's home in the absence of exigent circumstances. See *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981). Plant argues that exigent circumstances were lacking when Omaha police officers entered his home because they did not have a reasonable belief from a present factual basis that anyone was in the Plants' home. Plant argues that since his fourth amendment right against unreasonable searches was violated, Cindy Plant's and James Bartlett's statements made to Dr. Woerth and to Sergeant Muldoon and photographs of the home should have been suppressed as fruits of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

Following a pretrial hearing, the trial court overruled Plant's motion to suppress the photographs taken in the Plants' residence and the children's statements. The defendant made no objection at trial to the admission of the photographs. Therefore, Plant may not raise as error in this appeal the admission of the photographs into evidence. In a criminal trial, after a pretrial hearing and order overruling a defendant's motion to suppress evidence, the defendant must object at trial to admission of the evidence which was the subject of the suppression motion in order to preserve the question for appeal. *State v. Sock*, 227 Neb. 646, 419 N.W.2d 525 (1988); *State v. Pointer*, 224 Neb. 892, 402 N.W.2d 268 (1987). Thus, we concern ourselves with only the out-of-court statements of the children.

This court has recognized that exigent circumstances may be found to exist in an emergency situation. *State v. Resler, supra.* In the context of this case, the rationale for the emergency doctrine is to allow " 'police officers [to] enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance. . . .' " *Id.* at 254-55, 306 N.W.2d at 922 (quoting *Root v. Gauper*, 438 F.2d 361 (8th Cir. 1971)). The elements of the doctrine may be summarized as follows: (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; and

(3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *State v. Resler, supra.* In the absence of a warrant, the State has the burden to prove that the search was conducted under circumstances substantiating the reasonableness of the search or seizure. *State v. Abdouch,* 230 Neb. 929, 434 N.W.2d 317 (1989).

Before forcing entry into the Plants' home, the entering police officers had information from which they could reasonably conclude that two 4-year-old children and a 2-week-old infant were unaccounted for and had been left unattended for several hours. The entering officers had attempted unsuccessfully to verify reports of Plant's wife, mother, and sister that the children were at the Plants' residence. The officers were also aware that the information Plant had given other officers as to his and the children's whereabouts and activities was misleading. One of the officers had observed an automobile matching that of the defendant in a lot across the street from the Plants' residence. It left the area without the driver's contacting the police or the residence. The entering officers were also familiar with a report to police that 4-year-old James Bartlett had suffered continual abuse by the defendant and that Christopher Bartlett was in critical condition because of his injuries.

All of this information was gathered by police from reliable sources and demonstrates that the officers entering the Plants' home had reasonable grounds to believe that an emergency was at hand and that there was an immediate need for police assistance for the protection of the three small unaccounted-for children. The information also demonstrates that there was a reasonable basis approximating probable cause for associating the emergency with the place to be searched, i.e., the Plants' home. Under the totality of the circumstances, had the police officers failed to enter the home to determine the well-being of the children, they may well have been derelict in their duty in light of all the knowledge they possessed at that time. The police officers who participated in the forced entry into the house testified that their motivation in entering the Plants' dwelling was to ensure the safety of the children, not to arrest Plant or

conduct an evidentiary search.

The trial court determined that the warrantless entry into the Plants' home was proper under the emergency doctrine. In determining the correctness of a ruling on a motion to suppress, the Supreme Court will uphold a trial court's findings of fact unless those findings are clearly wrong. *State v. Marcotte*, 233 Neb. 533, 446 N.W.2d 228 (1989).

The district court was not clearly wrong in finding that the warrantless, nonconsensual entry into the Plants' house by police officers did not violate Plant's fourth amendment constitutional right against unreasonable search and seizure. Therefore, the defendant was not entitled to have the statements of Cindy Plant and James Bartlett suppressed on the basis of an unreasonable search and seizure. Plant's first assignment of error is without merit.

## CINDY PLANT'S STATEMENTS
### SECOND DEGREE MURDER

Early Sunday evening on May 22, Cindy Plant was interviewed by Sergeant Muldoon. He spoke to the child in a foster home where she had been placed by authorities. The record discloses that Cindy's interview was tape-recorded. Over Plant's objection, the tape recording of Cindy's interview was received in evidence and played before the jury. The jury could find beyond a reasonable doubt from Muldoon's testimony of the interview and from the taped interview that Cindy observed her father throw Christopher at James. Cindy also said that Christopher suffered head injuries when the defendant threw him on the floor. Plant objected to Cindy's statements on the grounds of hearsay and violation of his right to confrontation.

Plant in this appeal claims that the trial court erroneously admitted into evidence the statements Cindy Plant made to Sergeant Muldoon. The State offered the statements under three statutory provisions: the excited utterance hearsay exception and the two residual hearsay exceptions.

It is within the trial court's discretion to admit or exclude relevant evidence which is otherwise admissible, and such ruling will be upheld on appeal absent an abuse of discretion. See, *State v. Rowland*, 234 Neb. 846, 452 N.W.2d 758 (1990);

*McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Schall*, 234 Neb. 101, 449 N.W.2d 225 (1989).

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. Neb. Rev. Stat. § 27-803(1) (Reissue 1989). The underlying theory of the exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987). To qualify as an excited utterance, a statement must meet the following criteria: (1) There must have been a startling event; (2) the statement must relate to the event; and (3) the statement must have been made by the declarant while under the stress of the event. *Id.* The crucial question in this case is whether Cindy Plant's statements were made while she was still under stress from the startling event.

Under the common-law res gestae exception upon which the excited utterance exception is based, courts traditionally imposed a contemporaneous requirement, meaning that the statement was made while the event was still in progress, and a spontaneity element, requiring that the statement was made while the declarant was still under the influence of the exciting event. *Id.* However, it has been recognized that special circumstances exist with regard to the statements of very small children, and their statements are admitted for the reason that it is unlikely a small child would fabricate stories of abuse. *Id.* As a result, numerous jurisdictions have relaxed the requirements that a statement be contemporaneous and spontaneous. *Id.* This court relaxed the contemporaneous requirement in *State v. Red Feather*, 205 Neb. 734, 289 N.W.2d 768 (1980). There, we held that the time lapse between the assault and the statements is not dispositive; rather, the crucial consideration is whether there has been time for conscious reflection. Because the stress of an assault is present for some time in children after the

assault has occurred, this court, in *In re Interest of R.A. and V.A., supra,* likewise loosened the spontaneity requirement. The key requirement is that the statement be made without time for conscious reflection. *Id.*

Plant argues that a child's statements made after questioning as to events which occurred 2 days previously do not qualify as excited utterances. Regarding the temporal element of Plant's argument, we reiterate our holding in *Red Feather, supra,* that the time lapse is not dispositive. Furthermore, this court, as well as other jurisdictions, has held that hearsay elicited under similar circumstances constitutes an excited utterance. See, *In re Interest of R.A. and V.A., supra* (statements made after returning from a weekend visit with a noncustodial parent during which a sexual assault occurred); *State v. Roy,* 214 Neb. 204, 333 N.W.2d 398 (1983); *In re Marriage of Theis,* 121 Ill. App. 3d 1092, 460 N.E.2d 912 (1984) (utterance made 2 months after the incident); *State v. Padilla,* 110 Wis. 2d 414, 329 N.W.2d 263 (1982) (hearsay declaration made 3 days after the final incident); *State v. Galvan,* 297 N.W.2d 344 (Iowa 1980) (2 days between time of offense and statement). See, also, *People in Interest of O.E.P.,* 654 P.2d 312, 318 (Colo. 1982) (asserting that "[t]he element of trustworthiness underscoring the excited utterance exception, particularly in the case of young children, finds its source primarily in the 'lack of capacity to fabricate rather than the lack of time to fabricate' ").

The fact that Muldoon's questioning preceded Cindy Plant's declarations does not per se destroy their character as excited utterances. See, e.g., *Roy, supra; Red Feather, supra; United States v. Iron Shell,* 633 F.2d 77 (8th Cir. 1980), *cert. denied* 450 U.S. 1001, 101 S. Ct. 1709, 68 L. Ed. 2d 203 (1981); *People in Interest of O.E.P., supra; People v. Woodward,* 21 Mich. App. 549, 175 N.W.2d 842 (1970).

While it is not necessary to show that the declarant was visibly excited in order to qualify under the excited utterance exception, see *In re Interest of R.A. and V.A., supra,* a declarant's nervous state is relevant to the issue of whether the statement was made by the declarant while under the stress of the event. Muldoon testified that at the time he interviewed Cindy Plant, she was extremely shy and apprehensive. Cindy

Plant sucked on a finger, clung to her foster mother, and buried her head into her foster mother. The child was not very verbal, and Muldoon spoke to her for 20 minutes before she would respond. Having observed the brutal nature of the incident, a young child would remain in a stressed condition for some period of time. Cindy Plant's age and her condition at the time of the interview further demonstrate Muldoon's need to ask leading questions. Furthermore, a child of 4 years is hardly adept at the type of conscious reflection necessary to fabricate a story of infanticide. See *People in Interest of O.E.P., supra* (a child of 3 years lacks the reasoned reflection to concoct a story of sexual abuse implicating the child's mother). The principles in regard to admission into evidence of excited utterances by small children related in *State v. Roy, supra*, are equally applicable here. Based on the foregoing case law and the circumstances of this case, it cannot be said that the trial court's determination that Cindy Plant's statements in the taped interview constituted excited utterances was clearly untenable, unfairly depriving the defendant of a substantial right and denying just results in matters submitted for disposition.

The residual hearsay exceptions are delineated in § 27-803(22) and Neb. Rev. Stat. § 27-804(2)(e) (Reissue 1989). Section 27-803(22) provides that the following is not excluded by the hearsay rule:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (a) the statement is offered as evidence of a material fact, (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and

address of the declarant.

Clearly, the evidence was offered as evidence of a material fact, i.e., how Christopher was fatally injured. Besides the defendant, the only other alleged witnesses to the murder were the defendant's mother, his wife, and Cindy Plant. There was evidence from which the trial court could find that because of her age and lack of interest, Cindy Plant's statements were more probative on how Christopher received his fatal injuries than the testimony of Gloria Plant or the defendant's mother or than any other evidence the State could procure through reasonable efforts. Thus, the child's statements to Muldoon constitute "statement[s] [which are] more probative on the point for which [they are] offered than any other evidence." The notice requirement of the statute was complied with in this case. Defense counsel acknowledged that he was aware that Sergeant Muldoon would testify regarding the out-of-court statements made to him. Plant focuses solely on the element of trustworthiness, arguing the statements made to Sergeant Muldoon on May 22 were not trustworthy.

It is important to keep in mind that the residual hearsay exception is to be used rarely and only in exceptional circumstances. *U.S. v. Shaw*, 824 F.2d 601 (8th Cir. 1987), *cert. denied* 484 U.S. 1068, 108 S. Ct. 1033, 98 L. Ed. 2d 997 (1988). In *Idaho v. Wright*, ____ U.S. ____, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990), the U.S. Supreme Court assessed the factors necessary to demonstrate "equivalent circumstantial guarantees of trustworthiness" under the residual hearsay exception when a criminal case is involved. " '[P]articularized guarantees of trustworthiness' must be shown from the totality of the circumstances [which] include only those that surround the making of the statement and that render the declarant particularly worthy of belief." 110 S. Ct. at 3148. In other words, "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." 110 S. Ct. at 3150. By way of illustration, the Court outlined some of the factors that may properly relate to whether hearsay statements are reliable: spontaneity of the statement, consistent repetition, mental state of the declarant, use of terminology

unexpected of a child of a similar age, and lack of motive to fabricate.

The spontaneity factor is present in this case, as Cindy Plant volunteered a number of statements without prompting from Muldoon. The child was nervous and excited, which demonstrates that she was still under the stress of the event, ensuring reliability of her statements. Given Cindy's tender age, it is unlikely that her statements recounting such horrendous events are unreliable. There is not a scintilla of evidence from which it could be concluded that Cindy had any motive to provide false information. Moreover, her statements incriminated her natural father as opposed to her stepmother. Cindy's statements were made to a police officer, an authority figure commanding truthfulness. Related to this, the interview was conducted by one professionally trained in eliciting the truth from an interviewee. Cindy's statements over the course of her interview with Muldoon were substantially consistent. In view of all the facts that support the finding of the trial court that Cindy's statements were trustworthy, Plant's argument that the leading nature of some of Muldoon's questions detracts from the trustworthiness of the statements is not persuasive. See *Wright, supra* (use of leading questions with children, when appropriate, does not necessarily render responses untrustworthy). The trial court did not abuse its discretion in admitting Cindy Plant's statements under the residual hearsay exception prescribed in § 27-803(22).

The second residual hearsay exception, set forth in § 27-804, is identical to that in § 27-803(22) except that unavailability of the declarant must be shown. Section 27-804(1) provides in relevant part: "Unavailability as a witness includes situations in which the declarant . . . [i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity . . . ."

To support the State's contention that Cindy Plant was unavailable to testify, a letter from the child's psychologist that Cindy was unable to testify was received into evidence without objection. In the letter, Cindy's psychologist, who had been treating the child on an outpatient basis for several months, concluded:

I believe that Cindy's appearance in court would be most traumatic for her and would precipitate a combination of emotional and behavioral problems, most notably extreme withdrawal and regression. If Cindy were required to testify, I expect that she would immediately become withdrawn by putting her head down, placing her hands over her face, and saying absolutely nothing.

Other courts have concluded that child victims of abuse may be unavailable for purposes of this residual hearsay exception due to the trauma resulting from the abuse. See *State v. J.C.E.*, 235 Mont. 264, 767 P.2d 309 (1988); *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987). In view of this evidence that Cindy Plant would be traumatized and unable to testify, the trial court did not abuse its discretion in determining that the declarant was unavailable to testify. See *State v. Bothwell*, 218 Neb. 395, 355 N.W.2d 506 (1984) (stating that it is within the sound discretion of the trial court to determine whether the unavailability of a witness has been shown).

We conclude that the trial court did not abuse its discretion in admitting Cindy Plant's statements into evidence under any or all of the three theories proposed by the State. Having resolved this issue, we turn to Plant's assertion that admission of Cindy Plant's tape-recorded statements denied him his constitutional right to confrontation.

Plant does not state whether he bases his right to confrontation on the U.S. Constitution's sixth amendment or on article I, § 11, of the Nebraska Constitution. It is of no import, since the analysis is the same under either provision. See *State v. Roy*, 214 Neb. 204, 333 N.W.2d 398 (1983) (addressing the defendant's federal and state confrontation clause claims under a single analysis).

The sixth amendment's confrontation clause, which is made applicable to the states through the 14th amendment, see *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The primary interest secured by the confrontation clause is the right of cross-examination. *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).

"The right to confront and cross-examine witnesses is primarily a functional right that promotes reliability in criminal trials." *Lee v. Illinois*, 476 U.S. 530, 540, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986).

If the confrontation clause were interpreted literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial. *Roberts, supra.* The right to confrontation is not absolute.

> This is so because the question of admissibility of hearsay evidence against a criminal defendant who has no opportunity for confrontation involves two very important but competing interests: the protection of the defendant's fundamental right to confront the witnesses against him, and the pursuit of the public's interest in the disclosure of reliable information that can lead to effective law enforcement.

*U.S. v. Chapman*, 866 F.2d 1326, 1330 (11th Cir. 1989), *cert. denied* ____ U.S. ____, 110 S. Ct. 321, 107 L. Ed. 2d 312 (citing *Roberts, supra*, and *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). In balancing these competing interests, the Supreme Court has required that two requirements must be met when a hearsay declarant is not available at trial. First, "the Confrontation Clause *normally* requires a showing that [the declarant] is unavailable." (Emphasis supplied.) *Roberts, supra* at 448 U.S. at 66. The uncontroverted evidence overwhelmingly demonstrates that Cindy Plant was unavailable to testify. Therefore, in this case, it is irrelevant whether the confrontation clause permits a hearsay statement to be introduced into evidence without a showing that the declarant is unavailable. Second, the "statement is admissible only if it bears adequate 'indicia of reliability.' " *Id.* The *Roberts* Court explained that reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. See, e.g., *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987) (holding that in a case involving the coconspirator hearsay exception, indicia of reliability need not be shown since the coconspirator exception is a firmly rooted hearsay exception). The principles announced in *Roberts, supra*, were reaffirmed in *Idaho v.*

*Wright*, _____ U.S. _____, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990).

The U.S. Court of Appeals for the Seventh Circuit held that a psychologist's testimony that a child victim of abuse would be unable to testify and be psychologically harmed is sufficient to show unavailability for purposes of confrontation clause analysis. See *Nelson v. Farrey*, 874 F.2d 1222 (7th Cir. 1989), *cert. denied* _____ U.S. _____, 110 S. Ct. 835, 107 L. Ed. 2d 831 (1990). See, also, *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987) (upholding a trial judge who based his finding of unavailability on expert testimony indicating that a child abuse victim would be uncommunicative if asked about the assault and could be further traumatized by courtroom proceedings).

As the preceding discussion concerning § 27-804(2)(e) demonstrates, the trial court correctly determined that Cindy Plant was unavailable.

The trial court did not abuse its discretion in admitting into evidence Cindy Plant's excited utterances because they bore adequate indicia of reliability. See *State v. Roy, supra.* A number of courts have held that the excited utterance exception is a firmly rooted hearsay exception for which reliability may be inferred. See, e.g., *Stidum v. Trickey*, 881 F.2d 582 (8th Cir. 1989), *cert. denied* _____ U.S. _____, 110 S. Ct. 1151, 107 L. Ed. 2d 1055 (1990); *Martinez v. Sullivan*, 881 F.2d 921 (10th Cir. 1989), *cert. denied* _____ U.S. _____, 110 S. Ct. 740, 107 L. Ed. 2d 758 (1990).

Likewise, the district court did not abuse its discretion in admitting into evidence Cindy Plant's statements because they bore adequate indicia of reliability under either residual hearsay exception. See *State v. Roy, supra.* As has been stated, the child's statements satisfied the circumstantial guarantees of trustworthiness required by each of the residual hearsay exceptions. In this case, that conclusion is dispositive of the indicia of reliability prong. See, *Wright, supra*; *United States v. Dorian*, 803 F.2d 1439 (8th Cir. 1986). Indeed, in analyzing the admissibility of Cindy Plant's statements under the residual hearsay exceptions, we have equated the trustworthiness requirement under the residual hearsay exceptions with the reliability element of the confrontation clause.

It is unclear from the record whether Plant's hearsay and lack of confrontation objection related to Cindy's statements to Dr. Woerth concerning both James and Christopher or only to her statements concerning James. For purposes of this opinion, we shall assume the objection was to Cindy's statements concerning both James and Christopher.

Dr. Woerth testified that at the time Cindy made her statements to him at the medical center, she appeared "very excited and anxious" and very nervous and that her increased heart rate was consistent with her nervousness and excitement. Among other things, Cindy told the doctor that "James had pulled Christopher's hair," after which Plant started hitting and kicking both boys; that "Daddy choked Christopher"; and that "Christopher didn't wake up."

Cindy's out-of-court statements to Dr. Woerth constituted excited utterances. As the excited utterance exception is a firmly rooted hearsay exception, see, *Stidum, supra*; *Martinez, supra*, reliability may be inferred. See *Idaho v. Wright, supra*. Thus, her statements were admissible in evidence over Plant's hearsay and lack of confrontation objection. We recognize that the statements that Cindy made to Dr. Woerth were not as lengthy or as inclusive as those made in her taped interview and in some respects varied somewhat from those made to Muldoon. However, by admitting Cindy's statements into evidence, the trial court impliedly held that any differences in the statements did not affect their trustworthiness, and that they could be considered by the jury in determining the weight and credibility to be given to the statements.

It cannot be said that the trial court abused its discretion in admitting into evidence any of Cindy's out-of-court statements relating to the charge of second degree murder against her father.

### First Degree Assault and Child Abuse

In her tape-recorded interview with Muldoon, Cindy said, "My daddy stepped on James' foot" and "My daddy hit James . . . with his fist." She also said that her father hit James in the stomach with his fist and had hit the boy in the face. When asked if her father hit James' leg, Cindy responded, "Yeah, he

broke his—James broke—my daddy hit James' leg and James falled on the porch." Cindy also said that "my daddy kicked him [James] with his feet when—'cause James won't walk to my daddy." She also said that because James would not walk, he was beaten "hard on his foot." As previously stated, Plant objected to this evidence on hearsay and lack of confrontation grounds.

Because we conclude that the trial court did not abuse its discretion in determining that Cindy's statements regarding James' injuries satisfied the requirements of either residual hearsay exception, we need not decide whether the trial court abused its discretion in finding the statements also qualified as excited utterances.

As previously discussed, the trial court did not abuse its discretion in finding that Cindy Plant was unavailable to testify. Therefore, either residual hearsay exception is applicable here. The only argument raised by Plant in this regard is whether Cindy Plant's statements about the assault and abuse perpetrated on James satisfy the trustworthiness element of the residual hearsay exceptions. Again, as our prior discussion illustrates, the requirement of trustworthiness, as well as the remaining elements of the residual hearsay exceptions, has been satisfied here.

As we stated in our prior discussion in regard to the murder charge against Plant, the trial court's finding under the residual hearsay exceptions that Cindy Plant was unavailable as a witness and that her statements were trustworthy disposed of the confrontation clause argument. The same is true with respect to her statements regarding Plant's abuse of James Bartlett. Moreover, as will be set out later, in most respects, Cindy's out-of-court statements in regard to how James received his injuries, including those to Dr. Woerth, were generally cumulative to evidence given by other witnesses. Thus, the admission into evidence of Cindy's out-of-court statements regarding James' injuries did not result in any prejudice to Plant. The trial court did not abuse its discretion in admitting these statements of Cindy Plant's under either residual hearsay exception, nor did it abuse its discretion in determining that their admission did not violate Plant's right to confrontation.

## JAMES BARTLETT'S STATEMENTS

In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). When there is some incorrect conduct by a trial court which, on review of the record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant, the error is harmless. *Id.* "Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact." *Id.* at 504, 437 N.W.2d at 140. See, also, *State v. Guy*, 227 Neb. 610, 419 N.W.2d 152 (1988).

Plant claims that the trial court erred when it permitted Sergeant Muldoon to testify, over an objection on the grounds of hearsay and lack of confrontation, that the injured 4-year-old James Bartlett told him that the defendant hit Christopher and that "Daddy hates me" and "Daddy hits me."

We first address James' statement that the defendant hit Christopher. The statement does not establish a nexus between the striking of Christopher and the infliction of the fatal injury. However, in light of Cindy's and Gloria Plant's testimony that the defendant hit Christopher, the evidence is cumulative, and any error in admitting the statement was harmless beyond a reasonable doubt.

Next to be considered is whether the admission of James' statements to Sergeant Muldoon that the defendant hated him and had hit the boy constituted error. Dr. Woerth testified that during his medical examination of James Bartlett on May 21, the child made no response when asked if his mother was responsible for his injuries. Without objection, Dr. Woerth also testified that when he asked James if his father caused the injuries, James nodded his head affirmatively.

Gloria Plant testified that the defendant broke James' toe with a hammer; that he beat James with his fists, a boot, and a two-by-four; that she observed the defendant kick James in the

jaw; and that Plant's mother said that if Plant did not stop abusing the children, she would do something about it.

Plant told a neighbor that he kicked James Bartlett off the porch. The defendant told his cellmate, while both were in the Omaha jail, that he, Plant, had broken James' leg when he was "correcting" the child. Gloria Plant testified that James' leg was hurt when the defendant twisted it. The Plants' babysitter testified she had observed the defendant kick James with such force that the child was airborne. An employee of a neighborhood restaurant observed Plant slam the front seat of a two-door car into James as the child was entering the back seat. The defendant testified that he had kicked James with sufficient force to knock the boy forward on his face, that he had on occasion beaten James, and that he was not particularly fond of the boy because the child "would go . . . to the bathroom right in his pants right in front of you just for the fun of it."

Thus, there was other properly admitted overwhelming evidence upon which the jury could find beyond a reasonable doubt that Thomas Plant was guilty of child abuse and first degree assault of James Bartlett. As a review of the evidence recited above demonstrates, each purported hearsay statement was independently proven by properly admitted evidence. Because any alleged error was harmless beyond a reasonable doubt, Plant's assignment of error that admission into evidence of either Cindy's or James' statements to Muldoon was erroneous is without merit.

The defendant's convictions are affirmed.

AFFIRMED.

SHANAHAN, J., concurring in the result.

The "excited utterance" exception to the rule against admission of hearsay is found in the Nebraska Evidence Rules, namely, Neb. Evid. R. 803:

> Subject to the provisions of [Neb. Evid. R. 403], the following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (1) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition . . . .

Yet, this court tilts with temporal windmills en route to the boundary between an "excited utterance" and hearsay. The majority concludes that 2 days between the witnessed assault, as an "exciting" occurrence, and Cindy Plant's statements do not disqualify her statements as excited utterances and shores up its conclusion with random references to decisions involving various time intervals, for example, 2 days or 2 months, which did not render some statements inadmissible as hearsay. For all the cases mentioned to support the majority's position that particular time intervals did not adversely affect admissibility, there are just as many decisions rejecting admissibility based on those same intervals. See J. Myers, Child Witness Law and Practice § 5.33 (1987 and Cum. Supp. 1990). Absent from the majority's opinion is any analysis of why different time intervals permit or prevent admissibility of a statement under stress of excitement as an exception to the rule against hearsay. If "time is fleeting," the value of a decision determining admissibility under Neb. Evid. R. 803(1) on the basis of time is equally ephemeral.

Although the majority believes that the "crucial question in this case is whether Cindy Plant's statements were made while she was still under stress from the startling event," the issue is whether Cindy's stress, resulting from the excitement of her witnessing the brutal assault on her stepbrother, caused her statements to Sergeant Muldoon. A corresponding question is whether Sergeant Muldoon utilized impermissible persuasion and suggestion or coaxing to effect Cindy's statements. See, *Com. v. McEachin*, 371 Pa. Super. 188, 537 A.2d 883 (1988) (the statement, as an excited utterance, must clearly be the product of stress caused by a traumatic experience); *People v Straight*, 430 Mich. 418, 424 N.W.2d 257 (1988) (the statement, as an exception to the hearsay rule, must be caused by the stress of excitement from an event or condition rather than the result of a combination of physical stress and repeated questioning).

Some 2 days after the child victim was assaulted and that assault had been extensively investigated by police, Sergeant Muldoon, who, according to the majority's characterization, is "professionally trained in eliciting the truth" from young children, contacted 4-year-old Cindy Plant for an investigative

interview concerning the assault. *Elicit* means "to draw or bring out." Webster's Third New International Dictionary, Unabridged 736 (1981). Muldoon commenced the interview around 7:30 p.m., but did not start his tape recorder for the interview until at least "[t]wenty minutes, a good 20 minutes" after the interview was underway. What communication occurred between Cindy Plant and Sergeant Muldoon during the 20-minute interval before activation of the tape recorder is undisclosed and, consequently, is relegated to the realm of complete conjecture or absolute speculation. What is contained in the recorded 34-minute interview is a series of Muldoon's leading questions with Cindy Plant's responses to those questions.

It is not Muldoon's leading questions by themselves that cast suspicion on the reliability of Cindy Plant's responses during the recorded interview, for, as observed by Professor Myers: "[C]ourts are in agreement that questioning itself need not destroy the spontaneity required by the exception. When questioning is leading, however, or when the adult drags the statement out of the child, the requirement of spontaneity may be missing." J. Myers, *supra*, § 5.33 at 342-43. Also, as Professor Myers notes, very young children are susceptible to suggestion from authority figures, such as police officers. See J. Myers, *supra*, § 4.6.

Since the record fails to identify the content of the communication between Cindy Plant and Muldoon during the 20-minute period preceding the tape-recorded interview, we are left with several unanswered questions on account of the unrecorded interview and the silent record, namely: Did Sergeant Muldoon provide Cindy with the facts or other crucial information about the assault? Did he direct that Cindy repeat his statements for recording? Was the recording nothing more than the officer speaking through the child? Was prospective and imminent disapproval from an authority figure brought to bear on Cindy? Or did Muldoon merely get acquainted with Cindy to establish a comfortable atmosphere for the interview?

The State should have been required to present a foundation that Cindy's trauma from observation of the assault caused or produced the account of the incident related by Cindy Plant to

Sergeant Muldoon. That foundational information would have allowed the trial court to determine whether Cindy's statements were produced by the stress of excitement caused by her observation of the assault, a prerequisite for admissibility of Cindy's statements as an exception to the hearsay rule. See Neb. Evid. R. 104(1) (preliminary questions of admissibility of evidence). As the case now stands, there is a valid question whether Cindy Plant's statements were the product of excitement caused by her observing the assault or whether her statements were produced by investigative information and leading questions from Muldoon. Absence of a factual basis concerning causality undermines the trial court's evidential reception of Cindy's statements and precludes a realistic review of that ruling on admissibility of evidence.

Consequently, although the majority suggests that the requirements for admissibility of a child's statement as an excited utterance have been relaxed, the requirements of the excited utterance exception have been so "relaxed" that the requirements no longer stand up and have actually collapsed.

Also, the State should have been required to present evidence negating impermissible influence by Muldoon regarding Cindy's statements. Without such evidence, the trial court was not in a position to determine whether there were equivalent circumstantial guarantees of trustworthiness required for admissibility under Neb. Evid. R. 803(22). See Neb. Evid. R. 104(1). Without that determination, Cindy's statements did not qualify for admission under the residual exception.

Since Cindy's statements failed to qualify under any exception to the hearsay rule, the trial court erred in admitting Cindy's statements.

This brings us to still another point, the majority's expression "It is within the trial court's discretion to admit or exclude evidence . . . and such ruling will be upheld on appeal absent an abuse of discretion." In essence, the foregoing rule allows a court the choice whether to comply with the Nebraska Evidence Rules in ruling on an evidential question at trial. A trial court must adhere to any of the Nebraska Evidence Rules in which discretion has no role; adherence is not optional. Hence, a court may not discretionarily admit evidence which is hearsay or

otherwise inadmissible under the Nebraska Evidence Rules.

Nevertheless, in view of all the other evidence which was properly admitted in Plant's trial, the erroneous admission of Cindy Plant's statements is harmless beyond a reasonable doubt. See *State v. Watkins*, 227 Neb. 677, 686, 419 N.W.2d 660, 666 (1988): "Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant." See, also, *State v. Cox*, 231 Neb. 495, 504, 437 N.W.2d 134, 140 (1989): "Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact." For that reason, and notwithstanding the majority's misperception regarding Neb. Evid. R. 803(1), Plant's conviction must be affirmed.

GRANT, J., concurring.

I agree with the court's decision affirming defendant's convictions. I cannot agree with the court's holding that the statements of 4-year-old Cindy Plant made to Officer Muldoon 2 days after the injuries inflicted by defendant on Christopher Bartlett, and concerning defendant's conduct at the time of those injuries, were "excited utterances" and therefore admissible in evidence. I concur because I believe the statements were admissible under Nebraska's residual hearsay exceptions in Neb. Rev. Stat. §§ 27-803(22) and 27-804(2)(e) (Reissue 1989) for the reasons set out in the majority opinion. I believe, however, that for this court to hold that the child's statements were "excited utterances" extends that doctrine to extraordinary and improper lengths.

The facts surrounding the child's statements to the officer show conclusively, to me, that the child's taped statements were not spontaneous and, therefore, not excited utterances. The child's statements followed a 20-minute preliminary conversation between the officer and the child. The contents of that conversation are not before us, and we do not know what was said by either the child or the officer. It is undisputed that

344

the conversation took place 2 days after the incident in question.

I agree that the time interval is not controlling, see *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987), but the interval should be considered. I also agree with the majority's statement that "[t]he key requirement [to a determination of spontaneity] is that the statement be made without time for conscious reflection."

What I cannot agree with is the majority's conclusion that the facts in this case permit the reception of the child's taped statements as excited utterances. In this regard, the majority opinion states: "Cindy's statements were made to a police officer, an authority figure commanding truthfulness. Related to this, the interview was conducted by one professionally trained in eliciting the truth from an interviewee." In the circumstances in this case, I cannot see how statements *elicited* (and I do believe that is the appropriate word) from a 4-year-old child by a trained interviewer 2 days after an event could be spontaneous. I think we here stretch the excited utterance rule to the point where all utterances by a child may be admissible. I think that is wrong.

Nonetheless, I concur because, as stated above, I believe there were appropriate other grounds for the admission of the child's statements to the officer. Overwhelming other evidence pointed to the defendant's guilt, including spontaneous statements of the same child to the physician who treated her.

HASTINGS, C.J., joins in this concurrence.